FEDERAL HOME LOAN BANK OF
SAN FRANCISCO

v.

LONG BEACH FEDERAL SAVINGS &
LOAN ASS'N.

TITLE SERVICE CO.

v.

AMMANN et al.

LONG BEACH FEDERAL SAVINGS
& LOAN ASS'N et al.

v.

FEDERAL HOME LOAN BANK OF
SAN FRANCISCO.

HOME INV. CO. et al.

v.

FEDERAL HOME LOAN BANK OF
SAN FRANCISCO et al.

MALLONEE et al.

v.

FAHEY et al.

FEDERAL HOME LOAN BANK OF
LOS ANGELES et al.

v.

FEDERAL HOME LOAN BANK OF
SAN FRANCISCO et al.

Civ. Nos. 13979, 5421, 5678.

United States District Court
S. D., California, C. D.

June 10, 1954.

As Corrected June 29, 1954.

For findings of facts, conclusions of law, orders and judgment, see 122 F. Supp. 960.

See also 122 F.Supp. 472.

Sylvester Hoffman, Los Angeles, Cal., Philip H. Angell, San Francisco, Cal., Verne Dusenbery, Portland, Or., for Federal Home Loan Bank of San Francisco and others.

F. Henry NeCasek, Long Beach, Cal., for Roy E. Hegg and George Turner.

O'Melveny & Myers, and Richard Fitzpatrick, Los Angeles, Cal., for Federal Home Loan Bank of Los Angeles; Coast Federal Savings & Loan Association and others.

W. I. Gilbert, Jr., Los Angeles, Cal., for Receiver Ernest Utley and for First Federal Savings & Loan Ass'n of Wilmington.

James E. Burns, Charles Dal Sooy, and Alden Ames, San Francisco, Cal., for Pioneer Investor's Savings & Loan Association and others.

Linnell & Smith, Long Beach, Cal., for Harold Lee Newendorp and Charles E. Bradley.

Robert A. Moffitt, Los Angeles, Cal., for Land Title Ins. Co.

Thomas F. Menzies and Harold L. Watt, Los Angeles, Cal., for Home Indemnity Co.

Lyman B. Sutter, Long Beach, Cal., for Title Service Co.

Raymond Tremaine, Los Angeles, Cal., for Robert H. Wallis.

Charles K. Chapman, Long Beach, Cal., for Long Beach Federal Savings & Loan Ass'n.

Westover & Smith, Los Angeles, Cal., for Mallonee and others.

Frank G. Makepeace, Long Beach, Cal., for intervenor, Lillian A. Coggswell.

Crail & Crail, Los Angeles, Cal., for Joe Crail.

Roger W. Powers and Paul L. Zimmerman, Los Angeles, Cal., for Charles Taylor.

Shafer & Seymour, Compton, Cal., for Fred G. Hunter and Melba N. Hunter.

Austin, Austin & Jones, Compton, Cal., for Wayne H. Sones and Helen M. Sones.

Kelsey Petterson, Los Angeles, Cal., for M. E. Spice.

Bates S. Himes, Beverly Hills, Cal., for C. C. Connor, dba Surety Finance & Adjustment Co.

Emmett E. Doherty, Los Angeles, Cal., for plaintiff in intervention, John D. Willhoit.

Ronald Walker, Los Angeles, Cal., Special Master.

HALL, District Judge.

This octopean litigation is again before the Court in connection with the subject matter of eleven undecided matters in case No. 13979–FH. They are as follows:

1. Report of Receiver and Petition for Instructions

2. Motion of Federal Home Loan Bank Board to quash service of summons made pursuant to court order filed 3–3–53;

3. Motion of Home Investment Co. et al., for summary judgment quieting title to homes of 8000 borrowers against foreclosure of loans paid in full, and motions for summary judgment quieting title of trustee, Title Service Co. and beneficiary Long Beach Federal Savings and Loan Assn. pur. not. filed 5–21–53;

4. Motion of Plaintiff to

(a) Dismiss Homeowners cross-claim for quiet title, and

(b) Strike and drop Home Investment Co. as a party pur. not. filed 5–29–53;

5. Motion of Plaintiff

(a) To drop parties

(b) Or for severance and early trial filed 6–5–53;

6. Motion of Plaintiff

(a) To dismiss cross-claim of defendant Long Beach Federal Savings and Loan Assn.,

(b) To strike said cross-claim, fld 6–5–53;

7. Motion of Plaintiff

(a) To vacate order granting leave to Title Service Co. to intervene and to file its complaint in Intervention and Interpleader, and to strike said pleading,

(b) To dismiss said complaint in intervention, fld 6–5–53;

8. Motion of Plaintiff to dismiss third party complaint of Long Beach Federal Savings and Loan Assn. (fld 10–10–52) fld 6–5–53;

9. Motion of Plaintiff

(a) To vacate order granting leave to Robert H. Wallis to intervene and to file its complaint in intervention and interpleader, and to strike said pleading,

(b) To dismiss said complaint in intervention fld 6–5–53;

10. Motion of Plaintiff to strike from Answer of Defendant Long Beach Federal Savings and Loan Assn. fld 6–5–53;

11. Motion of Long Beach Association to deposit $7,000,000, cash or bonds, into court in case No. 13979, fld 12–21–53;

Any consideration of any of said matters must be had in the light of proceedings heretofore in it and related matters, (actually about 60 different lawsuits under only three numbers), only a portion of which have found their way into the reports, as follows: Mallonee v. Fahey (statutory three-judge court), D.C., 68 F.Supp. 418, (Sept. 5, 1946); Fahey v. Mallonee, 332 U.S. 245, 67 S.Ct. 1552, 91 L.Ed. 2030 (June 23, 1947) reversing D. C., 68 F.Supp. 418; Ex parte Fahey (June 23, 1947), 332 U.S. 258, 67 S.Ct. 1558, 91 L.Ed. 2041; Mallonee v. Fahey, D.C., 14 F.R.D. 273, (Dec. 1, 1949); Home Loan Bank Board v. Mallonee (April 2, 1952), 9 Cir., 196 F.2d 336; Fahey v. O'Melveny & Myers (November 6, 1952), 9 Cir., 200 F.2d 420; Mallonee v. Fahey (Nov. 30, 1953), D.C., 117 F. Supp. 259; Fahey v. Calverley (Dec. 29, 1953), 9 Cir., 208 F.2d 197.

There are several suits in this court, all of which are interlocked in one way or another, bearing numbers 5421, 5678, 13979, 7989, 13953 and 15588.

In view of the fact that some matters herein discussed concern consolidated case 5421–5678, as well as 13979, this memorandum will be filed in those cases and will serve as their direction for orders which are appropriate hereunder in each of them.

In the memorandum order of this court made on November 30, 1953, 117 F.Supp. 259, provision was made for disposition of a number of pending motions in the consolidated case 5421–5678, and action on the motions which were pending in 13979 above set forth was deferred.

Of the motions in 13979, above listed, that indicated as No. 1, "Report of Receiver and Petition for Instructions," was placed off calendar and has not been reset.

The first portion of this memorandum will treat with those motions listed above which have to do with what has been described as the "Homeowners quiet title" actions, on various cross-claims in intervention in the within action. A more complete description of what is involved in that connection can be found in 14 F.R.D. 273 and in 117 F.Supp. 259, and will not be repeated herein except as is necessary to give clarity to the views herein.

Briefly, however, it would be well to describe at this point the situation giving rise to that phase of this, and related, litigation which long ago reached the quagmire stage.

The Los Angeles Federal Loan Bank was a home loan bank, organized under the appropriate federal statutes, which acted as the banking agency for savings and loan associations, organized under the Federal Home Loan Bank Act, 12 U.S. C.A. § 1421 et seq., and related statutes. Among other things, it acted as a depository for safekeeping of property and assets of Federal Savings and Loan Associations. By a series of orders of the Federal Home Loan Bank Board, made on March 29, 1946, the Los Angeles Bank was dissolved, its assets and properties were forthwith transferred to the Portland Home Loan Bank and the offices of the Portland Home Loan Bank were removed from Portland to San Francisco and the name thereof changed to the San

Francisco Federal Home Loan Bank, see 14 F.R.D. 273.

The Long Beach Federal Savings and Loan Association (hereinafter called the Long Beach Association), was a savings and loan association organized under the Home Loan Bank Act and related statutes. Its principal business was to receive money on savings accounts from depositors and to loan the same to borrowers on real estate. Substantially, if not all, of its loans were made on individually owned homes or to builders on individual homes which were to be sold to individual buyers by the builders. The owner of the real property would execute a note payable to the Long Beach Federal Savings and Loan Association and, to secure that note would execute a trust deed, which trust deed conveyed the legal title of the real estate involved to a third party, who thereafter held the legal title, as trustee, under the trust deed and note, for the purpose of securing the payment of the note. The practice is customary in Southern California and has almost entirely replaced the traditional mortgage procedure. The notes were installment notes. The borrower who owned the parcel of property involved was the payor and obligor on the note, and is known, in the language of the law and the real estate business, as the "trustor" under the trust deed; the Long Beach Federal Savings and Loan Association which was the lender and payee on the note, as the "beneficiary" under the trust deed; and the person or organization holding the legal title as security under the terms of the trust deed and note, as the "trustee." On May 20, 1946, about 8000 of such notes and trust deeds were in existence with Long Beach Association as beneficiary, and Title Service Company as trustee.

On May 20, 1946, A. V. Ammann, under order No. 5254 of the Home Loan Bank Board of the same date, seized all of the property and assets of the Long Beach Federal Savings and Loan Association, as Conservator.

It appears that on March 29, 1946, there was on deposit with the Los Angeles Federal Home Loan Bank several thousand of such notes wherein the Long Beach Federal Savings and Loan Association was the payee, and the accompanying trust deeds wherein Long Beach Federal Savings and Loan Association was the beneficiary. These trust deeds and notes, along with approximately five and one-half million dollars in government bonds, were the property of Long Beach Federal Savings and Loan Association, were in the possession of the Los Angeles Bank for safekeeping only, and not as security for any loan; and it appears from the record in the case, and is undenied any place in these proceedings or in the multitude of proceedings had in consolidated case 5421–5678, that the Long Beach Federal Savings and Loan Association was not indebted in any sum whatsoever on March 29, 1946 or on May 20, 1946, to the Los Angeles Federal Home Loan Bank, or the Portland Home Loan Bank, or the San Francisco Home Loan Bank, (hereinafter called the San Francisco Bank).

Following the seizure of the Long Beach Association by Ammann, notes in the sum of approximately $7,000,000 were executed by Ammann to the San Francisco Bank. In addition to the retention by that bank of approximately five and one-half million dollars of government bonds owned by the Long Beach Association, and in the possession of the Los Angeles Bank on March 29, 1946, for safekeeping only, Ammann assigned all of the trust deeds and notes which were in the possession of the Los Angeles Bank on March 29, 1946, to the San Francisco Bank, as security on said notes and apparently continued to do so on other trust deeds and notes on loans made by Ammann during his conservatorship.

While conservator, Ammann executed [1] three documents to San Francisco Bank, (1) "Subordination Agreement" on May 28, 1946; (2) "Collection Agreement" on May 28, 1946, and, (3) "Pledge Agree-

[1] (The officers of Long Beach Association had previously executed similar agreements to Los Angeles Bank.)

ment" on May 20, 1946. The text of each follows:

"Subordination Agreement

"Whereas, the undersigned has applied to the Federal Home Loan Bank of San Francisco for a loan to be made to it upon its note secured by certain collateral notes and mortgages or deeds of trust, and may hereafter make application for further loans upon like security; and,

"Whereas, the Federal Home Loan Bank of San Francisco requires, as a condition to making such loan, that the undersigned subordinate to the lien of the Federal Home Loan Bank of San Francisco, as pledgee, any other notes secured by said mortgages or deeds of trust, or claims for additional loans made under the terms of, or secured by, any such mortgage or deed of trust;

"Now, Therefore, in consideration of the premises, and of the making of any loan by the Federal Home Loan Bank of San Francisco to the undersigned, the undersigned does hereby undertake and agree to and with the Federal Home Loan Bank of San Francisco, its successors and assigns, that all notes, secured by mortgage or deed of trust at any time pledged by the undersigned to the Federal Home Loan Bank of San Francisco as collateral security for loans made to it by said Federal Home Loan Bank of San Francisco, shall have priority in right and remedy over any claims, however evidenced, for other loans heretofore or hereafter made by the undersigned to the makers of such collateral notes and mortgages or deeds of trust, and shall be satisfied out of the property mortgaged or hypothecated before recourse to such property may be had by the undersigned for the repayment of any such additional loans, and that the undersigned will retain possession of any notes taken for such additional loans and will not assign, pledge, or transfer the same, it being the intent hereof that any

note secured by mortgage or deed of trust pledged to the Federal Home Loan Bank of San Francisco shall, as between the undersigned, its successors and assigns, and the Federal Home Loan Bank of San Francisco, its successors and assigns, be deemed the sole obligation so secured, and that until full payment thereof shall have been made, the mortgaged or hypothecated property and all proceeds from sale or other disposition thereof shall be held solely as security for the repayment of such pledged note. The undersigned expressly reserves the right to apply any surplus of mortgaged or hypothecated property or proceeds from sale or other disposition thereof remaining after satisfaction of such note, to the liquidation of other loans made by it to the mortgagor or trustor.

"In Witness Whereof, the undersigned has caused these presents to be executed in its name by its proper officers, thereunto duly authorized, and its corporate seal to be hereunto affixed this 28th day of May 1946.

| (SEAL) | Long Beach Federal Savings and Loan Assn. |
| | Borrower |
| Attest: | |
| | By A. V. Ammann |
| —— Secretary | Conservator |

"Note: This form should be executed and transmitted with all mortgages or trust deeds offered as security for collateral whenever such mortgages or trust deeds recite that they are intended to secure future or additional loans to the mortgagor or trustor, or other indebtedness of such mortgagor or trustor to the Borrower.

18594"

"Collection Agreement

"This Agreement, entered into this 28th day of May, 1946, between Federal Home Loan Bank of San Francisco, a corporation duly organized under the Laws of the United States, hereinafter called the 'Bank',

and Long Beach Federal Savings and Loan Association, a corporation organized and existing under the laws of the ———— hereinafter called the 'Institution':

"Witnesseth: That for and in consideration of the loan of money made or about to be made or hereafter to be made to the Institution by the Bank, upon the primary obligation of the Institution secured by the assignment of certain notes, bonds, mortgages, deeds of trust, deeds to secure a debt, Vendors' liens and shares of stock pledged therewith and/or other collateral or one or all of them, and jointly and severally hereinafter referred to as Collateral;

"The Institution as its agent shall collect all interest and principal, dues upon shares, installments of principal or other sums secured by or stipulated in said Collateral to be paid, as herein provided, and when adequate security has been given by the Institution and maintained, the Institution may retain such collections until a payment to the Bank from the Institution becomes due, and the Bank may permit the Institution to retain sums so collected in excess of the amount required to meet obligations of the Institution to the Bank; provided, however, that if the Institution shall receive payment of the full balance remaining due on any said Collateral, or if the Institution shall collect sums in excess of the amount payable thereon in due course, reducing the balance due by as much as five per centum, all such collections shall be forthwith reported by the Institution to the Bank, in order that immediate note may be taken thereof with respect to its bearing upon the diminution of the collateral security held by the Bank, and if from such consideration it shall appear that the collateral security has been unduly diminished by such collections, the Institution shall forthwith upon demand from the Bank substitute other Collateral

in place of the reduced or satisfied Collateral, or failing to furnish such substituted Collateral the Institution shall transmit such collections to the Bank to be held by the Bank in place of such reduced Collateral.

"The Bank will refrain from collecting any payments upon Collateral until default shall have been made in due payment or otherwise, or the Institution shall be in receivership or liquidation.

"All payments received by the Institution as dues, subscriptions or payments on installment shares of the Institution held as Collateral to the assigned Collateral, the withdrawal value of all dividends upon such shares are, for the purposes of this agreement, payments of installments of principal on the debtors' indebtedness, and as such, repayable to the Bank as installments on the principal of this indebtedness if and when demanded.

"The Institution further agrees that if the whole or any part of this obligation shall be due and payable to the Bank, the Bank shall not be required to have recourse first to the Collateral held as security for this obligation, but may, at its option, first have recourse thereto or pursue such other and further remedies for the enforcement of the collection of this debt as it may deem proper in its discretion to adopt.

"In Witness Whereof the respective parties hereto have caused this instrument to be executed and their corporate seals to be affixed hereto by their duly authorized officers the day and year hereinabove written.

Federal Home Loan Bank of San Francisco

Long Beach Federal Savings and Loan Assn.
(Name of Institution)

By A. C. Ewell
Vice President
(Seal)

By A. V. Ammann
Conservator
(Seal)

By E. E. Pearson
Asst Secretary

By
Secretary
18595"

"Pledge Agreement

"To the Federal Home Loan Bank of San Francisco

"It is hereby agreed by the undersigned association that any and all Government obligations owned by the undersigned at any time deposited with your Bank, or with the Federal Reserve Bank of San Francisco for your account, are pledged and assigned to your Bank as security for any and all indebtedness now or hereafter owing by this association to your Bank.

"In case of a default by this association in the payment of any indebtedness or in the performance of any obligation to your Bank, you are hereby authorized to realize on such security in the manner and to the extent provided in the note or notes evidencing such indebtedness and/or obligation.

Long Beach Federal Savings
and Loan Association
by A. V. Ammann, Conservator
_____
(Association)
 By A. V. Ammann,
Dated: Long Beach Conservator
 Title
 May 20, 1946 By _____
 Title
 18596"

Ammann also executed to San Francisco Bank a document designated "Assignment of Mortgages or Deeds of Trust" bearing date of May 28, 1946, (the date of its execution seems to be a matter of dispute), which reads as follows:

"Assignment of Mortgages or Deeds of Trust

"For Value Received, the undersigned Long Beach Federal Savings and Loan Association hereby assigns and transfers to Federal Home Loan Bank of San Francisco, a corporation organized under and existing by virtue of the laws of the United States, with its principal office in the City and County of San Francisco, State of California, certain mortgages on all beneficial interest under certain deeds of, or transfers in, trust hereinafter respectively described: Together With the note or notes therein described or referred to, all of which the undersigned hereby endorses, the money due or to become due thereon with interest, and all rights accrued or to accrue under said mortgages or said deeds of, or transfers in trust.

"This assignment is made to secure any indebtedness now or hereafter owing by the undersigned to said Bank, its successors or assigns. Upon any default of the undersigned, said Bank may sell the property hereby assigned, at public or private sale with or without notice.

"Description of Mortgages or Deeds of Trust

(There follows 40 pages of lists describing several thousand trust deeds with date, Trustor, Trustee and recording information.)

"In Witness Whereof, the undersigned has caused this Assignment to be duly executed by its officers thereunto duly authorized, and its corporate seal to be hereunto affixed this 28th day of May, A.D., 1946.

(Corporate Seal) Long Beach Federal Savings
 & Loan Association
 (Seal) _____
 (Name of Borrower)
 By A. V. Ammann
 · Conservator"

Its acknowledgment bears the same date. An acknowledgment entitles a document to be recorded in the office of the County Recorder. But neither it, nor any other such assignments, were recorded.

He also executed three similar documents bearing the same date, one containing 23 pages of similarly described trust deeds and each of the other two containing only one sheet of described trust deeds. He executed a total of at least 12 similar documents covering many thousand trust deeds, bearing the dates of June 1, 1946, June 21, 1946, December 23, 1947, and January 6, 1948.

All of the "Homeowners" notes and trust deeds involved in the motions for summary judgment were included in the descriptions of notes and trust deeds attached to said assignments.

On January 24, 1948, Ammann, as conservator, released possession of the assets and properties of the Long Beach Association to it under the terms of an order of the Home Loan Bank, No. 388, and an order of this court of January 23, 1948, in action No. 5421, (action No. 5421 having been filed May 27, 1946).

On March 13, 1948, the conservator's notes in favor of the San Francisco Bank in the sum of $7,000,000 had been reduced to $6,300,000 in face, and on that date, after proceedings in court, this court made its order, (Appendix A, text of order), in action No. 5421–5678, directing the deposit in court by the San Francisco Bank of the original conservator's notes of $6,300,000, of all of the government bonds and of all of the homeowners notes in favor of Long Beach Association and the trust deeds securing them, which it then had in its possession, as security on the conservator's notes. Thereafter, in order to prevent approximately 8000 separate obligors on those notes and trust deeds from being drawn into the quicksands of this complicated litigation as parties, or compelling each of them to institute separate suits to protect them and their property rights, and at the same time to preserve the asserted rights of the main contestants, this court, on March 26, 1948, made its order (Appendix B, text of Order), directing the delivery of all the homeowners notes and trust deeds securing them, to the Long Beach Association which had theretofore been deposited in court under the above-mentioned order of March 13, 1948 made in consolidated actions 5421–5678, but retained in the registry of the court the United States government bonds and approximately one and one-half million dollars in cash, theretofore deposited in Court, subject to adjudication of liability on the conservator's notes of $6,300,000, and subject to whatever lien rights existed on the property so retained in court, in favor of San Francisco Bank.

The Title Service Company was trustee holding the legal title to several thousand parcels of property under trust deeds executed to secure homeowners notes in favor of Long Beach Association, as beneficiary, in the manner above described.

The Title Service Company has filed a cross-complaint in intervention in the within matter which will be described later at more length, but which, among other things, seeks by its *third* cause of action therein to quiet title of the trustors to the 8000 properties covered by the notes and trust deeds, and to quiet its title as trustee under said trust deeds as against the San Francisco Bank and other cross-defendants.

The Home Investment Co. was the borrower, i. e., the payor, on 174 different notes and the trustor on the 174 separate deeds of trust wherein the Title Service Company was the trustee and the Long Beach Association was the beneficiary.

The Home Investment Co. has filed a cross-complaint in intervention on behalf of itself and of all of the other borrowers or payors or homeowners similarly situated, i. e., all of the borrowers on notes and trustors under trust deeds in existence on May 20, 1946, (the date of the seizure), and in existence on March 13 and March 26, 1948 (the date of 'the orders) for the delivery to the association of the trust deeds & notes. (Appendix B), to quiet their title as against the claims of the San Francisco Bank in the within action, and other cross-defendants.

The Long Beach Association, as payee and owner of the notes and as beneficiary under the trust deeds securing each of them, has filed a cross-claim, the *third* cause of action of which seeks likewise to quiet title of the borrowers, i. e., the "homeowners" of the real properties, and of itself to the notes and as beneficiary under the trust deeds securing them.

The above motions which relate to the subject matter of "Home Owners Quiet

Title" cross-claims are *Item 2*, "Motion of Federal Home Loan Bank Board, William K. Divers, J. Alston Adams, Kenneth G. Heisler, Federal Savings & Loan Insurance Corp., O. K. LaRoque, A. V. Ammann, George K. Bramley and Carl R. Gray, Jr., to *quash* the service of summons made upon them pursuant to three separate orders for service of summons made by this court on March 3, 1953", upon application of Long Beach Federal Savings and Loan Association, the Title Service Corp., and Robert H. Wallis under the provisions of 28 U.S.C. Sections 1655, 1335, 1397 and 2361 and the Federal Rules of Civil Procedure.

*Item No. 3* above, "Motion of Home Investment Co., Long Beach Association and Title Service Co. *for summary judgment*";

*Item No. 4* above, "Motion of Plaintiff, (a) to *dismiss* Home Investment Company's cross-claim for quiet title and, (b) to *strike* and drop Home Investment Company as a party";

*Item No. 6* above, "Motion of Plaintiff, (a) to *dismiss* cross-claim of defendant Long Beach Federal Savings and Loan Association, and, (b) to *strike* said cross-claim";

*Item No. 7*, "Motion of Plaintiff, (a) to *vacate* order granting leave to Title Service Co. to intervene, and to *strike* its complaint in intervention and, (b) to *dismiss* the complaint in intervention in the alternative."

■ The within action was originally commenced on March 27, 1952 as action No. 597402 in the California State Courts for Los Angeles County, entitled, "Federal Home Loan Bank of San Francisco, a corporation, v. Long Beach Federal Savings and Loan Association, a Corp.". Upon appropriate proceedings it was removed to this court on April 3, 1953, and received No. 13979. A motion to remand was thereafter denied. In all of the motions of plaintiffs and cross-defendants, the point is made that the motion to remand was improperly denied. That order of denial (Appendix C, text of order), is now the law of the case and will stand, for that reason, as well as

for the reason that no persuasive arguments or authorities are now presented which would require a different conclusion.

The complaint by the San Francisco Bank is founded on the four notes of the total face amount of $6,300,000 allegedly executed by A. V. Ammann as conservator for the Long Beach Federal Savings and Loan Association. The complaint is in five causes of action, the first four of which are stated as causes of action for debt due on each of the four promissory notes involved. The *Fifth* cause of action is for *declaratory relief* and to *foreclose the lien* claimed to exist by the San Francisco Bank, under the terms of said conservator's four notes, upon the notes and trust deeds which were the subject matter of the orders of this court of March 13 and March 23, 1948, (Appendixes A and B) in action 5421–5678. Much controversy has developed concerning the precise position of the San Francisco Bank with relation to its claimed lien on borrowers' notes and trust deeds thereon which, after deposit in court by San Francisco Bank under said Order of March 13, 1948 (Appendix A), were turned over to the Long Beach Association by said order of March 26, 1948 (Appendix B). Two paragraphs of the complaint of the San Francisco Bank in its fifth cause of action, after reciting the appointment of Ammann as conservator and the execution by him of the four conservator's notes of $6,300,000, read as follows:

"VIII

"That said defendant assigned, delivered and pledged to plaintiff certain United States Government Bonds, promissory notes secured by mortgages or deeds of trust on real property and stock of plaintiff as security for the repayment of said sums advanced and loaned to said defendant by said plaintiff as aforesaid. That said security was given and required under the provisions of the Federal Home Loan Bank Act (12 U.S.C., Sec. 1421, et seq.), and the rules and regulations adopted by

the Home Loan Bank Board pursuant thereto. That by reason of *said assignments and pledges said plaintiff became, ever since has been and still is* the *owner* and *holder* of a lien upon all said pledged and assigned property."

and paragraph XV reads as follows:

### "XV

"That by the terms of the charter issued plaintiff by the aforesaid Home Loan Bank Board pursuant to the Home Owners Loan Act of 1933, as amended, and the application made by defendant to said Board for a charter, defendant and its members agreed to be bound by each and all of the terms and provisions of the Home Owners' Loan Act of 1933, [12 U.S.C.A. § 1461 et seq.] the Federal Home Loan Bank Act, and the rules and regulations of the Home Loan Bank Board; and that by reason thereof and the receipt of the aforesaid unpaid advances for the use of and which was used for the benefit of defendant, defendant is estopped from denying that it is indebted to plaintiff in the aforesaid sum of $6,300,000.00, and interest, and is estopped from denying the validity of the aforesaid four promissory notes, and is estopped from denying that *plaintiff is the holder of a lien upon all of the personal property pledged to plaintiff,* or any substituted collateral, and is estopped from denying that plaintiff is entitled to an equitable lien upon the property of defendant in an amount equal to the value of the personal property pledged with plaintiff as aforesaid." (Italics supplied.)

The four notes are attached to the complaint and provide for assignment in very broad terms, to San Francisco Bank of the notes and trust deeds thereon executed by borrowers to secure the repayment of loans by Long Beach Association. (Each are in the same form as the text of one which is Appendix D).

Other allegations in the *fifth* cause of action of the complaint of San Francisco Bank allege Long Beach Association is asserting San Francisco Bank has not, and never had, any lien on the notes and accompanying trust deeds. It also alleges that the court was wholly without jurisdiction in action No. 5421 to make the orders of March 13 and 26, 1948 (Appendixes A and B).

No other conclusion can be reached from the language of the complaint but that the San Francisco Bank seeks in action No. 13979 to *establish its lien as of the time prior to the date of the making* of the order of deposit of March 13, 1948 (Appendix A) and turnover order of March 26, 1948 (Appendix B) in 5421–5678, and *as of the time prior* to the dates of making the various orders on interpleader-interventions by the various Homeowners, which are listed in footnote 15, 14 F.R.D. 273, pages 306, 307, 308; or, as stated in the language of Mr. Angell, one of counsel for the San Francisco Bank, "It is the position of the San Francisco Bank that they are entitled to have full security for their $6,-300,000 plus all interest due thereon, *exactly as they had it at the time the money and the bonds and the notes and the deeds of trust were taken from the possession of the San Francisco Bank and placed in the Registry of the Court."* (Italics supplied.)

In the memorandum of November 30, 1953, 117 F.Supp. 259, at pages 286, 287, I stated, among other things, as follows:

"However, the position of the San Francisco Bank was further confused by a subsequent contrary statement made by Mr. Angell during the course of the argument on October 21, as follows, (pages 757, 758): 'We have filed a very simple action. That is what we conceive the San Francisco Bank rights to be. *We stand on it. * * * We state we stand on our complaint as it is filed* and we further say this court has no jurisdiction.'

"If the San Francisco Bank stands on its complaint as it is filed,

which includes a cause of action to foreclose and reestablish its position as security holder as of the date of the turn-over on March 13, 1948, then there can be no doubt in my mind that the trustees holding legal title to the individual-borrowers' properties under the trust deeds which have been paid off and are now being paid off to the Long Beach Association, as well as the debtors on the individual notes securing those trust deeds, may be confronted with a very serious and complicated situation which might require extensive and expensive litigation on their part. It is simple logic that if the San Francisco Bank secured the title by assignment from the conservator of the trust deeds and notes, and if the order of March 13, 1948 is vacated, dissolved and set aside, then the San Francisco Bank, having assigned the notes and trust deeds, not outright *but only conditionally, pursuant to the order of March 13,* 1948, will be in a position to claim that all reconveyances made by the trustees holding legal title of the properties under the trust deeds, after March 13, 1948, were void and may look, or attempt to look, to such trustees for satisfaction of any judgment obtained in 13979 for the value of the property as of the time of the turn-over order on March 13, 1948.

"Likewise, the San Francisco Bank may claim that the debtors on the notes securing those trust deeds, in view of the fact that they were claimed to be, (and it must be presumed that they were validly assigned to the San Francisco Bank) had no right to make payments thereon to the Long Beach Federal Savings and Loan Association but should have made payments thereon to the San Francisco Bank notwithstanding an agreement asserted by the San Francisco Bank to exist which was entered into prior to the appointment of the conservator authorizing the Long Beach Association to be its agent in the collection of balances due on notes. This is particularly so because of the confusing and contradictory statements in various pleadings as well as statements of counsel hereinbefore referred to.

"It must be remembered in this connection that the San Francisco Bank, by its formal pleadings and by the last authoritative statement of its counsel in court, are asserting that the Order of March 13, 1948 was void and that they stand on their complaint as it is filed which seeks to restore the status quo as to all securities including individual-borrower notes and trust deeds as of March 13, 1948.

"The two main contestants in action 13979 are the San Francisco Bank and the Long Beach Association, and the people who would be involved, or whose rights might be endangered by restoring the status quo as of March 13, 1948, are innocent third parties, that is to say, individual property owners who interpleaded in the 51 interpleader-proceedings in the consolidated actions 5421 and 5678, the debtors on the trust deeds and notes, and the trustees under the trust deeds holding legal title.

"It therefore seems to me that in view of the fact that the mandate ordered the dissolution, vacation and setting aside of the order of March 13, 1948, requiring the deposit of the collateral in court, *but did not order the dissolution, vacation or setting aside of the order of March 26, 1948, substituting collateral and directing the return to the Association of the notes and trust deeds securing them, that it was the intention of the appellate court to accept the substitution of collateral and that all questions concerning the borrowers' notes and trust deeds should be eliminated from litigation.* This can be done, by the execution

and appropriate filing of disclaimers or quitclaims by San Francisco Bank."

After the filing of that memorandum the San Francisco Bank, *on January 18, 1954, filed in the within case* (No. 13979) a *disclaimer* executed and acknowledged by it on November 27, 1953 and recorded in the official records of Los Angeles County on November 30, 1953 in Book 43263, at page 416417 of Official Records. A certified copy of a resolution dated August 24, 25, 1953 of the Board of Directors of the San Francisco Federal Home Loan Bank authorizing a disclaimer was filed in the within case on January 27, 1954. The full text of the disclaimer (without the acknowledgment) follows:

"Book 43263 page 416

"Disclaimer

"Comes now Federal Home Loan Bank of San Francisco, the undersigned, and Disclaims any and all present right, title, lien, interest or estate in, to or upon any and all of the real property more particularly described in any and every deed of trust, of record, wherein Long Beach Federal Savings and Loan Association, of Long Beach, California, is the named beneficiary and which were assigned to Federal Home Loan Bank of San Francisco by A. V. Ammann as Conservator of said Long Beach Federal Savings and Loan Association, or which were deposited in court in consolidated action No. 5421–5678 in the District Court of the United States for the Southern District of California, Central Division. This instrument is made for the express benefit of the owner or owners of each of the aforesaid parcels of real property, and their successors in interest, and is not made for the benefit of any other person or entity whomsoever. The undersigned, by these presents, does not waive, release, discharge, postpone or in any manner impair any of its rights as against said

Long Beach Federal Savings and Loan Association or the property and assets thereof, but to the contrary expressly reserves all such rights.

"Dated: November 27, 1953. (Seal)

Federal Home Loan Bank of San Francisco
By J. Alston Adams

J. Alston Adams
President
Ray E. Humphrey

Ray E. Humphrey
Treasurer."

■■ Under California law a grant of real property or an interest therein of more than an estate at will or for less than one year must be in writing, Cal. Civ.Code, § 1091, and is effective only upon delivery of the deed or instrument, Cal.Civ.Code, § 1054; 9 Cal.Jur. 149, and cases there cited. The above disclaimer is in effect a quit-claim deed. It was not, of course, delivered personally to the several thousand persons for whose benefit it was made. Conditional delivery is prohibited, Cal.Civ.Code, § 1056; constructive delivery is permitted, Cal.Civ.Code, § 1059; it is presumed to have been delivered on its date, Cal.Civ. Code, § 1055. Under Cal.Civ.Code, § 1059, subd. 2, a deed is constructively delivered "Where it is delivered to a stranger for the benefit of the grantee, and his assent is shown, or may be presumed."

Insofar as the disclaimer conveyed, or quit-claimed anything to Title Service Company, Long Beach Association and Home Investment Co., it was delivered to them when it was filed on January 18, 1954 in the within action. Insofar as it conveyed or quit-claimed anything to the Homeowner trustors who are not named-parties to this action, but for whose benefit the quit-claim was made, it must be presumed that they assented to its delivery for their benefit on that date also, as that was the actual date San Francisco Bank parted with possession thereof. I, therefore, hold that the effective date of the disclaimer

was the date of its filing in this action, viz., January 18, 1954.

### The Title Service Company Cross-Complaint in Intervention.

Following the removal of the within action to this court from the State Court, the Title Service Company, on August 18, 1952, filed a "Motion for Leave" to intervene and a proposed Complaint in Intervention. The motion was granted. The cross-complaint is long.[2] It is in three stated causes of action. The *first* cause of action appears to be one in *interpleader* and in the nature of interpleader wherein it states that it interpleads, "The legal titles conveyed to it as trustee upon each of said deeds of trust from the homes of approximately 8000 borrowers of said Association." (Par. 28): The *second* cause of action is stated to be a cause of action for *declaratory* relief; the *third* cause of action is stated to be a cause of action to *quiet title*. It re-incorporates many of the allegations contained in the first and second causes of action and seeks to quiet title to the property described in paragraph 2 of the third cause of action which reads as follows:

"Plaintiff in Intervention is the owner in fee, and for more than six years last past has been such owner, as trustee of the real property described in:

"(a) The deeds of trust recorded upon the date and in the respective books and pages of the Official Records in the Office of the County Recorder of Los Angeles County, all as detailed in the 'Order requiring the deposit of certain notes, deeds of trust, etc., held by the Federal Home Loan Bank of San Francisco,' which said order was filed on March 13, 1948, in said actions numbers 5421–5678—P.H. in said United States District Court; on pages numbers 12,188 to, and including 12,263 of the Clerk's Pagination of Record in the District Court. The said descriptions are also contained in pages 8423, to 8518 in Volume XVIII of the Printed Record on Appeal in Appeal Number 12511 to the United States Court of Appeals for the Ninth Circuit.

"(b) Described in that certain lis pendens recorded in the office of the County Recorder of Los Angeles County, California, in said Action No. 5421—P.H. in said United States District Court, in June of 1946, each and all of which documents are referred to, and incorporated herein by reference, and made a part hereof, the same as if set forth herein at length."

In view of the fact that this portion of the within memorandum is limited to the matter of quieting title of the property sometimes described as "Homeowners" titles I will, at this point, treat of the *third* cause of action for quiet title and will not discuss the allegations of *either* the *first* or *second* causes of action.

The essence of Title Service Company's assertion of right to intervene and to have its, and the homeowners' rights, quieted is found in paragraph 60 (beginning on page 39 of its complaint) and incorporated by reference in its *third* cause of action; and specifically in a short unnumbered paragraph on page 46 of its complaint reading as follows: "That the present action by the San Francisco Bank, seeking to foreclose a lien claimed by said Bank upon said

---

**2.** It, together with its exhibits comprises 237 typewritten pages; that of Long Beach Association 629 typewritten pages; that of Wallis 83 typewritten pages; all of them incorporate by reference the record in 5421–5678 which, on appeal, comprised over 12,000 printed pages. In the opinion of the Court of Appeals, 196 F.2d 336, some suggestion was made of delay by this court in acting on a motion in 5421. If I had no other cases at all, this matter would still be a gigantic task, but since November 30, 1953 I have heard and disposed of more than 650 separately calendered matters, including trials, and matters requiring written opinions.

notes and deeds of trust proposes to, appears to, and does affect the security of said deeds of trust and/or the rights, and/or powers of beneficiary, and/or trustees thereunder."

It is further alleged, in substance, that each of the trust deeds contained a provision which requires the Trustor, and, on his failure so to do, permits the trustee or beneficiary to appear in, and defend, *any* action or proceeding *purporting* to affect the security of the trust deed and note or of the *rights* or powers of the *beneficiary* or *trustee*.

Among other things, it is alleged that prior to the filing of its cross-claim and since the order of this court of March 26, 1948, in 5421–5678 (Appendix B), returning the trust deeds and notes from the registry of the court to the Long Beach Association, 1717 notes secured by trust deeds had been repaid by the payment of an approximately aggregate sum of $5,291,691.06 to the Long Beach Association by the owners of those properties who or which were obligors on the notes and Trustors under the trust deeds, and that the Title Service Company had executed reconveyances thereon.

The burden of the third cause of action of the Title Service Company's cross-complaint is, that the San Francisco Bank, by its fifth cause of action, in seeking to reestablish its lien as of the date prior to the order of March 13, 1948 (Appendix A), and as of the date prior to the date of each of the orders of 51 different interpleader-intervention proceedings in 5421–5678, involving a total of 480 parcels of property, details of which may be found in 14 F.R.D. 273, pages 306, 307, 308, has cast a cloud upon the title of, not only those who own property and are presently payors on notes still secured by trust deeds, but of all of the owners of property who have paid off their notes and secured reconveyances of their property from the trustee, whether through deposit in court, or subsequent to the order of March 26, 1948 (Appendix B); and, that such claim of right by the San Francisco Bank likewise casts a cloud upon the rights and duties of the Title Service Company, as trustee, both as to paid notes and their accompanying trust deeds, as well as unpaid notes and their accompanying trust deeds.

### Home Investment Company Cross-Complaint in Intervention.

The Home Investment Company was a borrower from the Long Beach Association on 174 parcels of property, executing separate notes and trust deeds for each. It intervened in action 5421–5678 and interpleaded approximately $800,000 into court, being the total of balances then due on the 174 trust-deed notes. Orders in 5421–5678 were made in that connection on its complaint in interpleader-intervention, which, among other things, required:

1. Both Ammann, as conservator claiming the sole right to receive payments on the notes, and the Long Beach Association contesting Ammann's right and claiming it for itself, to execute simultaneous requests for reconveyances to the trustee;

2. The trustee to execute the reconveyances,

3. The original notes and trust deeds to be cancelled and surrendered into court.

The purpose of that procedure was to permit the borrower to pay off his note and secure a clear and merchantable title to his property, without becoming a participant in the then already proliferating litigation. There were 50 other identical or similar proceedings had during the year 1946 and 1947, involving in some instances only one parcel of property, and, in others, many, where similar orders were made and similar proceedings followed. The total number of parcels involved in them, together with the Home Investment Co. interpleader-intervention, was 480, and the total sum of money deposited in court by the borrowers whose notes were thus discharged and property cleared, was the sum of $1,641,037.96, see 14 F.R.D. 273, at page 306 et seq.

By the order in 5421–5678 of March 26, 1948 (Appendix B), the lien of San Francisco Bank under the conservator's notes, was transferred from the homeowners notes and trust deeds to the money on deposit in court and to the $5,300,000 of government bonds deposited in court under the order of March 13, 1948 (Appendix A).

The 174 notes and trust deeds in which Home Investment Co. was the payor and trustor, as well as those involved in the other proceedings immediately above mentioned, were among those which were seized by Ammann when he took possession of the Long Beach Association on May 20, 1946, and, so far as I can learn, from the various lists of trust deeds and notes were assigned to San Francisco Bank as security under the instruments hereinbefore described.

The Home Investment Co. sues for itself and as a member of the class of all other persons similarly situated, i. e., borrowers owning property upon which they have executed trust deeds to secure notes payable to the Long Beach Association, whether paid or not.

The burden of the allegations of the Home Investment Co. concerning clouds on titles are, in substance, the same as contained in the *third* cause of action of the Title Service Co.

Cross-Claim of Long Beach Association.

As seen from footnote 2, the cross-claim of Long Beach Association is exceedingly lengthy. It is cast in *seven* causes of action. For the purposes of this portion of this memorandum the third cause of action, designated "a cause of action for quiet title," is the only one to be presently considered. That cause of action incorporates many of the allegations of the other six causes of action.

The property to which it seeks to quiet title is described in paragraph 3 of its third cause of action, which reads as follows:

"Cross-claimant, on May 18, 1946, was, at all times subsequent thereto, has been, and yet is, the absolute and unqualified owner of all beneficial interest in the notes and deeds of trust, and the trusts thereby created, and the ownership in real property therein involved, as beneficiary named in each of said deeds of trust, and as payee named in each of said notes. Said properties are described as:

"(a) The deeds of trust recorded upon the date and in the respective books and pages of the Official Records in the Office of the County Recorder of Los Angeles County, all as detailed in the 'Order Requiring the Deposit of Certain Notes, Deeds of Trust, Etc., Held by the Federal Home Loan Bank of San Francisco', which said order was filed on March 13, 1948, in said Action Nos. 5421–5678—P.H. in said U. S. District Court, on pages 12,188 to and including 12,263 of the Clerk's pagination of record in the District Court. The said descriptions are also contained in Pages 8423 to 8518, inclusive, in Volume XVIII of the Printed Record on Appeal in Appeal No. 12511 to the United States Court of Appeals for the Ninth Circuit;

"(b) Described in that certain lis pendens recorded in the Office of the County Recorder of Los Angeles County, State of California, in said Action No. 5421—P.H. in said United States District Court, in June of 1946; and

"(c) Of all assets in the Registry of this Court, including notes, deeds of trust, cash, or other valuables, deposited in the more than 50 interpleader interventions, details of which are alleged in paragraph 31 of the First Cause of Action hereof, which is reincorporated herein by reference the same as if set forth herein at length.

each and all of which documents are referred to, and incorporated herein by reference, and made a part here-

of, the same as if set forth herein at length."

Under Paragraph (c) above, the Long Beach Association seeks to quiet title to all of the assets in the registry of this court. Insofar as the instant matter under consideration is concerned, viz., the trust deeds described in (a) and (b) and heretofore mentioned, the court, in this memorandum, will not be concerned with, and nothing herein will be deemed to affect one way or the other, the assertion of its claim to quiet title to the property set forth in paragraph (c) above quoted, except as to the homeowners notes and deeds of trust therein mentioned which were deposited in court in 5421–5678 in the approximately 50 separate interpleader-interventions filed by various homeowners; that is to say, the conservator's notes, the cash and "other valuables" (the $5,300,000 government bonds) deposited in court in 5421–5678, are not involved in this phase and while they are undoubtedly the property of Long Beach Association, the question of "quieting" title to them is involved on the merits as San Francisco Bank claims a lien thereon as security for the conservator's notes.

From reading the *third* cause of action of the cross-claim of Long Beach, together with the other portions of its complaint incorporated by reference, it becomes evident that the disturbance to, or clouding of titles, of the homeowners under the notes and trust deeds herein elsewhere described, as well as the titles and rights of Long Beach Association therein or thereunder, arises by virtue of the allegations in the complaint of the San Francisco Bank in the within matter contained in its fifth cause of action hereinbefore adverted to.

### Motions for Summary Judgment (No. 3)

### Motions to Dismiss (Nos. 4, 6, 7b)

### Motion to Vacate (No. 7a)

On May 21, 1953 the Home Investment Co., the Title Service Co. and the Long Beach Association filed a joint motion (No. 3) for summary judgment *"quieting title to the homes of 8000 borrowers* against foreclosure of loans paid in full into the registry of the court, and motions for summary judgment quieting title of trustee Title Service Co. and of beneficiary Long Beach Federal Savings and Loan Assn."

As heretofore noted, there was not at that time on file in the within proceedings any disclaimer by the San Francisco Bank. (It was not filed until January 1954).

On May 29, 1953, the plaintiff filed a motion (No. 4) to dismiss the cross-claim of the Home Investment Co., to strike and drop Home Investment Co. as a party.

On June 5, 1953 the plaintiff filed a motion (No. 6) to dismiss the cross-claim of defendant Long Beach Association. Insofar as that motion to dismiss the cross-claim of Long Beach Association is involved, I will concern myself in this portion of this memorandum only with the motion to dismiss the cross-claim as to the *third* cause of action for quiet title, and that with regard only to the Homeowner-borrowers notes and trust deeds, described in (a) and (b), and that portion of (c) of paragraph 3 of the *third* cause of action to quiet title only as it concerns such trust deeds and notes as hereinbefore indicated, and not with regard to the government bonds and cash deposited in court.

On June 5, 1953 the plaintiff filed a motion (No. 7a) to vacate the order granting leave to the Title Service Co. to intervene and also a motion (No. 7b) to dismiss that complaint in intervention. This portion of the memorandum will treat only with that motion to dismiss insofar as it involves the *third* cause of action in the Title Service Company's complaint in intervention to quiet title.

In resolving the problems presented by the last above mentioned motions which, of course, include the broad question as to whether or not the cross-claims

of Title Service Co., Long Beach Association (as to their *third* cause of action) and Home Investment Co., state a claim for relief under Rule 8 Fed.Rules Civ.Proc., 28 U.S.C.A., the matter is broken down into three main questions:

1. What is the correct legal procedure to effectively quiet title, i. e., whether by judgment or by dismissal, in view of the Disclaimer?

2. Whether either Title Service Co. or Long Beach Association on the *third* cause of action in each of their cross-claims and Home Investment Co. as to its cross-claim, are proper parties to obtain such relief for themselves and as representatives of a class;

3. Whether summary judgment may, and should, be granted under the Federal Rules of Civil Procedure.

### 1.

The Legal Procedure to Quiet Title, i. e., Whether by Judgment or Dismissal.

The problem is easier stated than solved. One thing is certain: insofar as the San Francisco Bank is concerned, it has, by its disclaimer, now cleared the way to eliminate from the morass of this and related litigation the question of the validity of the "Homeowners" titles, regardless of the validity of the judgments in the 51 interpleader-interventions in 5421, and regardless of the validity of the orders in 5421 of January 23, 1948, 14 F.R.D. 273,315 and of March 13 and 26, 1948 (Appendixes A and B).

San Francisco Bank insists that it would be effective to clear those titles by *dismissing* the cross-complaints. On the other hand, the three movants for summary judgment insist that the appropriate procedure *requires a judgment* quieting title which can, and should be done in this case under the summary judgment procedure provided by the Federal Rules of Civil Procedure and the applicable California law.

The property being located in California and the trust deeds and notes being California contracts, the applica-ble law is the local law of the State of California under the provisions of 28 U.S.C.A. § 1652 and Federal Case Law.

In Rose v. Saunders, 9 Cir., 1934, 69 F.2d 339, 341, the Court of Appeals for this Circuit set forth the rule as to jurisdiction of this court in suits to quiet title, and as to the applicability of California law, both substantive and proceduralwise, at page 341 as follows:

"* * * Neither is it true that state statutes cannot increase federal equity jurisdiction. In Devine v. City of Los Angeles, 202 U.S. 313, 333, 26 S.Ct. 652, 657, 50 L.Ed. 1046 the Supreme Court in considering section 738 of the California Code of Civil Procedure, authorizing suits to quiet title, said: 'This statute enlarged the ancient jurisdiction of courts of equity in respect of suits to quiet title, but, the equitable rights themselves remaining, the enlargement thereof may be administered by the circuit courts of the United States as well as by the courts of the State.'"

The rule as to whether or not under the California law a party is entitled to a judgment *or* a dismissal, after a disclaimer has been filed, has been settled in California since 1890 when the Supreme Court decided the case of Bulwer Consolidated Mining Co. v. Standard Consolidated Mining Co., 83 Cal. 589, 23 P. 1102, 1104. It was a quiet title case wherein the defendant admitted that the plaintiff was the owner of the property involved, and "expressly disclaims any estate or interest therein adverse to the plaintiff." The defendant also denied that it ever had made any such adverse claim. The Supreme Court said: "* * * when, in an action to quiet title to land, the defendant disclaims any interest or estate in the premises, it is immaterial whether or not he had ever before claimed an interest or estate therein adversely to the plaintiff; for in *either event* (emphasis supplied) the plaintiff would be entitled simply to a judgment quieting his title, without costs." And further, 83 Cal. at

page 608, 23 P. at page 1108: "If, on the other hand, the defendant, as here, expressly disclaim any estate or interest in the land described in the complaint, and at the same time deny that he ever made any such adverse claim, the plaintiff would still be entitled to a decree quieting his title, but without costs. * * * The object of sections (of the California Code of Civil Procedure relating to quiet title) is to enable the plaintiff, in such action to dispel whatever may be regarded by third persons, as well as by the defendant, as a cloud upon his title; for, even though the defendant makes no adverse claim, third persons may regard plaintiff's title as being subject to an adverse claim by the defendant, which would be a cloud upon plaintiff's title, depreciating its value, and which he would be entitled to have removed by the decree of the court, so that his record title may appear perfect, not only to the defendant, but to all persons whom it may thereafter concern."

That case is accepted as the law of the State of California and that procedure has been, and is, followed almost universally in quiet title actions in the State of California.

■ From that case it is quite evident that under the law of the State of California, if a party asserts a claim of right to real property, or an interest therein, and if another party disclaims it, either in its pleadings or otherwise, the plaintiff is nevertheless entitled as a matter of procedure to a judgment quieting his title.

■■ The point is made by the San Francisco Bank that a "cloud" to be removable, must be founded on an instrument of record. There is nothing to the point as it is the settled law of California that the remedy of quieting titles is not confined, "to the case of an adverse claimant setting up a legal title, or even an equitable title; but * * * was *intended to embrace every description of claim whereby the plaintiff might be deprived of the property, or its title clouded, or its value depreciated, or whereby* *the plaintiff might be incommoded or damnified by the assertion of an outstanding title already held or to grow out of the adverse pretension"*; Head v. Fordyce, 17 Cal. 149, 151; and 22 Cal. Jur. 115, 116 and cases there cited (emphasis supplied.)

In Nichols v. Nichols, 8 Cir., 1927, 20 F.2d 474, the Court held that a quiet title suit would lie against an interest claimed to exist under a contract which became effective at death: At page 481 of 20 F.2d the court stated: "Under a California Statute almost identical with the Kansas statute, the Supreme Court of that state in Castro v. Barry, 79 Cal. 443, 446, 21 P. 946, 947, said: 'the proceeding is for the purpose of stopping the mouth of a person who has asserted or is asserting a claim to the plaintiff's property. * * * It is not aimed at a particular piece of evidence, but at the pretensions of an individual. * * * Nor is it necessary that the adverse claim should be of any particular character. * * * And the rule may be even more broadly stated, viz. that the action may be maintained by the owner of property to determine any adverse claim whatever.' "

■ While it is true that it does not appear that the assignments and transfers of the trust deed and notes to San Francisco Bank were recorded in the Office of the County Recorder, it must be remembered that San Francisco Bank persists in its claim that they were validly transferred. And, it must be remembered, as well, that the delivery, Cal.Civ.Code, § 1054, of a document transferring an interest in real property is effective to pass title regardless of its recordation, which, after all, is only for notice to the world of such transfer.

The allegations in the fifth cause of action of the complaint of the San Francisco Bank, are more than mere pretensions,—they are positive assertions of right and title. It is specifically held in Stoner v. Security Trust Co., 1920, 47 Cal.App. 216–221, 190 P. 500, that an action would lie under Section 1050 Cal. Code Civ.Proc. to quiet the title to a

purported assignment of a note and mortgage.

By both Sections 738 and 1050 Calif. Code Civ.Proc. a quiet title suit may be maintained on *personal property,* including money, the same as on real property. So the rules on money in the foregoing cases are applicable to the personal property involved here.

 I conclude that the effective procedure to quiet title in this case is by judgment and not dismissal.

### 2.

Are Title Service and Long Beach Association (As to Their Third Cause of Action) Proper Parties: and Which of Them, or Home Investment Co., If Any, Are Representative of a Class?

As heretofore indicated, the California Law is controlling (28 U.S.C. § 1652; Rose v. Saunders, supra,) unless Federal statutes, Rules of Civil Procedure or applicable case law hold to the contrary as to class actions.

Home Investment Co., Title Service Co., and Long Beach Association, each claim to be the representative of the class of approximately 8000 "homeowners," which may roughly be divided into two groups;

1. Those who paid off their notes and secured reconveyances of their property prior to the effective date of the disclaimer (January 18, 1954), whether through the 51 separate interpleader-intervention proceedings in 5421 which were all prior to the order in 5421–5678 of March 26, 1948 (Appendix B); or through the process of paying directly to the Long Beach Association, after said order of March 26, 1948 and prior to the effective date of the disclaimer, January 18, 1954 (a total of about 2200).

2. Those who subsequent to January 18, 1954, were still obligors on notes and trustors under trust deeds securing such notes with the Long Beach Association as Beneficiary and Title Service Co. as Trustee.

Before considering the complaint of Home Investment Co., I will first discuss the *third* cause of action of each—the Title Service Co. and Long Beach Association.

In each of the trust deeds appear the following provisions:

"To Protect the Security of This Deed of Trust, Trustor Agrees:

" * * * * * *

"12. To appear in and defend any action or proceeding *purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; * * *.*

"13. * * * to *pay, when due, all* encumbrances, charges, and *liens* with interest, on said property or any part thereof, which at any time appear to be prior or superior hereto; * * *.

"14. Should Trustor fail * * * to do any act as herein provided, then Beneficiary or Trustee, but without obligation so to do and without notice to or demand upon Trustor * * * may: * * * *commence, appear* in and *defend any* action or proceeding *purporting* to affect the security hereof *or the rights or powers* of *Beneficiary or Trustee;* pay, purchase *contest,* or compromise *any* encumbrance, charge or *lien* which in the judgment of either appears to be prior or superior hereto; and in exercising any such powers, incur any liability, expend whatever amounts in its absolute discretion it may deem necessary therefor, including cost of evidence of title, employ counsel, and pay his reasonable fees." (Emphasis supplied.)

 The trust deeds are three-way contracts, i. e., between the *trustor* (owner, borrower, obligor and payor on the note), the *trustee,* and the *beneficiary,* (lender, obligee and payee on the notes). The Trustee is the trustee for both the Trustor and the Beneficiary and the common agent for both parties, as both are beneficiaries to the extent of their respective interests, 25 Cal.Jur. 42; Hum-

boldt Savings Bank v. McCleverty, 161 Cal. 285, 119 P. 82; Atkinson v. Foote, 44 Cal.App. 149, 186 P. 831; Ainsa v. Mercantile Trust Co. 174 Cal. 504, 163 P. 898; Kellum v. San Mateo County Title Co., 127 Cal.App. 276, 15 P.2d 876.

Does the within action by the San Francisco Bank purport to affect the security [3] of the trust deed or the rights or powers of the beneficiary or trustee? Under the complaint of the San Francisco Bank, (particularly its fifth cause of action), clearly a situation may arise where judgment *may* be entered holding that the claimed lien of the San Francisco Bank to all of said trust deeds and notes, is *prior or superior to the lien* and right and title of the beneficiary under the trust deeds, and the rights, duties and title of the trustee or beneficiary under them.

A more complete discussion of the consequences of such claims is set forth in the memorandum of November 30, 1953, 117 F.Supp. 259, a portion of which is hereinabove quoted, and will not be repeated here.

 It appears from that discussion, and from the complaint of the San Francisco Bank, that it is inescapable that if judgment were to be given to the San Francisco Bank on its fifth cause of action as pleaded, it would affect the security of each and all of the trust deeds and the rights, powers and title of both the beneficiary and the trustee, and would, and does, cloud the titles of the "Homeowners." A judgment on the fifth cause of action, which would reestablish the lien of the San Francisco Bank as of the date of its alleged creation, would compound confusion and would or might compel each of the owners of the several thousand parcels of property to bring separate quiet-title suits. To prevent such a multiplicity of suits is one of the very objects and purposes of an equity suit and, by itself, constitutes a ground for the exercise of jurisdiction by United States District Courts. Yuba Consolidated Gold Fields v. Kilkeary, 9 Cir., 1953, 206 F.2d 884.

From the foregoing quoted provisions of the trust deeds, it was the right and duty of each one of the trustors under the trust to appear in the within action. And, under the terms of the above quoted provisions wherein any trustor so failed to appear, it is the right of both the trustee and the beneficiary to appear in an action and, in order to protect not only the beneficiary, but also the separate and different rights and titles of both the trustee and the beneficiary, to "contest" the lien asserted to exist in the complaint of the San Francisco Bank.

The right of a trustee or beneficiary to appear in an action affecting title appears to have been settled in California since 1922 when the Supreme Court decided the case of Title Guarantee & Trust Co. v. Griset, 189 Cal. 382, 208 P. 673, 676.

That case involved a registration proceeding under the "special" procedure provisions of the Torrens Title Act of California, Stat.1915, p. 1932. The Title Guarantee and Trust Co. was trustee under a deed of trust and appeared in the registration proceedings. The lower court held against the Title Company on the ground that it was unnecessary for it, or the beneficiary under the trust deed, to appear in the registration proceedings. The Supreme Court reversed, holding not only that the trustee was entitled to enter the proceedings in the lower court, but was a *necessary* party, because, while the proceedings under the Torrens Act were described as "special proceedings," they were nevertheless *adversary* proceedings, *"the very object of the act is to furnish a title impregnable against every attack from any source".* (Emphasis supplied.) It further held that such right to appear in the proceedings and the necessity of them for being a party, derived not only from the nature of the proceedings to secure an impregnable title, but also from the provisions of the trust deed similar to the hereinabove quoted provisions contained in the

---

3. Under Cal.Civ.Code, § 858, the power of sale under a trust deed, "is to be deemed a part of the security".

trust deeds involved in this case. In Title Insurance & Trust Co. v. California Development Co., 179 Cal. 734, 736, 178 P. 857, 858, the Court held that a trust deed, with similar provisions required the trustee to "diligently and faithfully" protect the interests of its beneficiaries. The object of the cross-claims of Title Service Co., Long Beach Association in the *third* cause of action of each of their complaints, and of Home Investment Co. is to place the title of the properties involved and their own titles, as they exist, either to the real property under the trust deeds or to the notes of the homeowners, in a position to be "impregnable against attack from any source."

I conclude therefore, that Title Service Co., as trustee under the trust deeds, and Long Beach Federal Savings and Loan Association (payee on the notes) as beneficiary under the trust deeds securing the notes, are appropriately and properly entitled to appear in this action and to intervene on behalf of the "homeowners" i. e., the trustors on the trust deeds and payors on the notes, unless applicable Federal Rules relating to class actions prevent it; to which question I shall now turn.

The terms of the trust deeds, hereinbefore set forth, considered together with the complaint of the San Francisco Bank in its fifth cause of action, brings the *third* cause of action of Title Service Co. and the *third* cause of action of Long Beach Association in each of their cross-claims clearly within the provisions of Rule 23 Fed.Rules Civ.Proc., concerning class actions.

It reads as follows, in its applicable portion:

"(a) Representation. If persons constituting a class are so numerous as to make it impracticable to bring them all before the court, such of them, one or more, as will fairly insure the adequate representation of all may, on behalf of all, sue or be sued, when the character of the right sought to be enforced for or against the class is \* \* \* (2) several, and the object of the action is the *adjudication* of *claims* which *do* or *may* affect specific property involved in the action; or

"(3) *several,* and there is a common *question of law or fact affecting* the *several rights* and a *common relief* is sought." (Emphasis supplied.)

It is alleged there are approximately 8000 parcels of property and obligors on the notes. Can anyone suggest that that number is not "so numerous as to make it impracticable to bring them all before the court?"

The specific terms in the trust deeds, wherein the trustors authorize the trustee and beneficiary to appear in such actions, forecloses any complaint that the appearance by the trustee and the beneficiary will not "fairly insure the adequate representation of all". Moreover, if each and every one of the trustors were parties to this action, or filed separate actions, no ultimate fact could be induced or proven or found in connection with the homeowners' rights to quiet titles, which cannot be found in these proceedings.

As heretofore seen, the object of the action as appears by the fifth cause of action in the complaint of the San Francisco Bank is the adjudication of claims which *do or may* affect specific property involved in the action. The notes and trust-deeds are specifically described in the exhibits referred to and the parcels of real property are described by reference to the recordation book and page.

And lastly, as heretofore set forth, there is a common question of law and fact affecting the various and several rights of the trustors, the trustee and the beneficiary; and, common relief, viz., a quiet title, is sought.

The point is made by the San Francisco Bank that as to the notes which have been paid off and as to their accompanying trust deeds where reconveyances have been executed, neither the Title Service Co., as trustee, nor the Long Beach Association, as beneficiary, *presently own anything* and thus have no title to quiet

either on behalf of themselves or the homeowners.

This raises the question as to whether or not Title Service Co. and Long Beach Association, or either of them, can represent as a "class" (group 1 above), those homeowners who paid their notes to Long Beach Association and received reconveyances from Title Service Co. prior to January 18, 1954; it also raises the question as to whether or not executed requests for reconveyances made by Long Beach Association, as beneficiary, to the Trustee, and in the possession of the trustee, and the paid notes in the possession of the beneficiary, upon which it executed the requests for reconveyances, are a present interest in "property," the title to which may be quieted.

Section 14 of the California Civil Code, insofar as pertinent, defines property as follows:

"1. The word 'property' includes property real and personal;

"2. The words 'real property' are coextensive with lands, tenements, and hereditaments;

"3. The words 'personal property' include money, goods, chattels, things in action, and evidences of debt".

Other applicable sections of the California Civil Code are:

"§ 654. Property, what. The ownership of a thing is the right of one or more persons to possess and use it to the exclusion of others. In this code, the thing of which there may be ownership is called property.

"§ 655. In what property may exist. There may be ownership of all inanimate things which are capable of appropriation or of manual delivery; * * * of all obligations; * * * and of rights created or granted by statute."

"§ 658. (Definition of real property: Severance by agreement.) Real or immovable property consists of:

"1. Land;

"2. That which is affixed to land;

"3. That which is incidental or appurtenant to land; * * *."

"§ 663. Personal property. Every kind of property that is not real is personal."

"§ 953. (Things in action defined.) A thing in action is a right to recover money or other personal property by a judicial proceeding."

"§ 954. Transfer and survivorship. A thing in action, arising out of the violation of a right of property, or out of an obligation, may be transferred by the owner. * * *"

Sections 738, 739 and 1050 of the California Code of Civil Procedure relate to actions to quiet title. Section 738 Cal. Code Civ.Proc. provides: "An action may be brought by any person against another who claims an estate or interest in real or personal property, adverse to him, for the purpose of determining such adverse claim; * * *." Section 1050 Cal.C.C.P. provides: "An action may be brought by one person against another for the purpose of determining an adverse claim, which the latter makes against the former for money or property upon an alleged obligation * * *." Section 739 Cal.C.C.P. provides that if a defendant in a quiet title action files a disclaimer, "the plaintiff cannot recover costs."

The Title Service Co., as trustee, having reconveyed the legal title to the properties which have been reconveyed, does not now own that legal title, and the Long Beach Association, having executed requests for reconveyances, does not own the right to request reconveyances, and presumptively has executed releases to both the trustor and trustee on the notes and trust deeds.

It is the position of both Title Service Co. and Long Beach Association, that each and all of the orders made by this court on the 51 separate interpleader-interventions filed by the individual homeowners in case No. 5421, were final judgments; that the order in 5421 for the return of the Association by the con-

servator to the Association's officers, of January 23, 1948, 14 F.R.D. 273, at page 315, was a final judgment; that both had independent grounds of jurisdiction which are not affected or controlled by the opinion of the Court of Appeals in Home Loan Bank Board v. Mallonee, in 9 Cir., 196 F.2d 336, or any of the other opinions of that Court of Appeals.

It is further the contention of both of them that the order of this court in 5421, of March 26, 1948, (Appendix B) was not affected or, invalidated by the decision of the appellate court in Home Loan Bank Board v. Mallonee, 9 Cir., 196 F.2d 336. I so held in the Order of November 30, 1953, Mallonee v. Fahey, D.C., 117 F. Supp. 259, 287.

 It is, and at all times has been, my view that as to each of the separate interpleader-interventions filed by the homeowners in 5421 (the list appears in 14 F.R.D. 273, at page 306,) an independent ground of jurisdiction in interpleader existed and that therefore each of the judgments made thereon were valid judgments and no appeal having been taken therefrom, they are final, see 117 F.Supp. 259. I find nothing in Home Loan Bank Board v. Mallonee, 9 Cir., 196 F.2d 336, Fahey v. O'Melveny & Myers, 9 Cir., 200 F.2d 420, or Fahey v. Calverley, 9 Cir., 208 F.2d 197, which would indicate to the contrary.

 And while it is my view that there were independent grounds for jurisdiction of this court in 5421 in making the restoration order of January 23, 1948, 14 F.R.D. 273, 315, for the return of the Association from Ammann as conservator to the officers of the Association, pursuant to Home Loan Bank Order No. 388, it is also my view, that regardless of whether or not the court had, or did not have, jurisdiction to make its order in 5421, of January 23, 1948, restoring the Association, 14 F.R.D. 273, 315, or *any* of the other orders and judgments in 5421, that the execution and filing of the disclaimer settles any right of the San Francisco Bank to go back of it, or *any* of the other orders and judgments, and now assert by virtue of its claimed lien a revival of the rights, duties, liabilities and obligations of the trustor, trustee, and beneficiary, or any or either of them, on said notes and trust deeds.

In the plethora of briefs, memoranda, points and authorities in this and related cases, which counsel have incorporated by reference in every one of the memoranda filed herein, and, on what is more than casual research on my own part, I have failed to find any reference to a decided case bearing on the subject as to whether or not either the Long Beach Association, as payee on the notes and beneficiary under the trust deeds, which notes were paid and reconveyances executed before January 18, 1954, or the Title Service Co. as trustee under such trust deeds, upon which it has executed reconveyances, owns such a present interest in property as to enable them to quiet title on their behalf.

The Title Service Co. has executed reconveyances to the property upon the paid notes, and thus does not presently hold the legal title; it is alleged, and not denied, that it has in its possession the original executed requests for reconveyances; it probably still has the original trust deeds upon which it executed reconveyances. The Long Beach Association, presumptively, has records or documents in its possession showing the payment to it in full of the notes by the homeowners; it also has received and has on hand the cash paid to it by the homeowners who have paid off their notes and trust deeds, of a sum in excess of $5,000,000. It is the contention of the San Francisco Bank, to which credence is lent by the disclaimer, that all those things are now merely evidences of former obligations which are past and discharged and do not exist as presently enforceable obligations. It is true that the trustee has parted with the legal title to the real property covered by the trust deeds and notes. It is true that the beneficiary has parted with its beneficial interest in the real property covered by the trust deeds and notes which beneficial interest was held by the trustee for its

benefit, as well as the trustor's. But it is also true that Long Beach Association, in place and stead of the promissory notes of the homeowners, and in place and stead of its beneficial interest in the property of the homeowners, has received a sum in excess of $5,000,000 subsequent to the orders on the interpleader-interventions and subsequent to the order of March 26, 1948 (Appendix B) and prior to January 18, 1954. It is also true that the Title Service Co. has in its possession the requests for reconveyances, which was the authority for Title Service Co. as trustee, to execute the reconveyances to the real property covered by the trust deeds to the owners thereof.

As heretofore seen, a quiet title action can be brought to quiet the title to money, Cal.C.C.P. § 1050: the San Francisco Bank alleges an obligation on the part of Long Beach Association to turn that money which it has received over to the San Francisco Bank on its claimed liens. Hence an action will lie to quiet the title to the money which the Long Beach Association received from the homeowners upon all the notes and trust deeds paid prior to the effective date of the disclaimer, January 18, 1954.

As will shortly appear, the *end result* of the disclaimer was to quiet the title of the homeowners; the Long Beach Association was constituted the agent of the San Francisco Bank to collect from the homeowners on their trust deeds and notes; the Long Beach Association did collect and did execute requests for reconveyances. The end result being to quiet the title of the homeowners, the intervening steps are valid, and Long Beach Association is entitled to a judgment quieting its title to the money received from the homeowners on the trust deeds and notes which were paid after the commencement of the within litigation and prior to January 18, 1954.

While the trustee, Title Service Co. has parted with the legal title to the real property under the trust deeds it nevertheless has in its possession the executed requests for reconveyance on each of the trust deeds. Such executed requests are evidence of its right to execute the reconveyance to the homeowners, and such evidence of a right is, in my judgment, "property," the title to which can be quieted, and which, in view of the disclaimer and the agency agreements, and for the other reasons appearing in this memorandum, is entitled to be quieted.

But neither the Long Beach Association, nor Title Service Co. has such a present interest in the real property covered by the notes and their accompanying trust deeds upon which reconveyances were made, prior to January 18, 1954, as to entitle either of them to a judgment quieting the title to such real property or to secure a quiet title judgment on the property covered by trust deeds, as representative of that group of the class of homeowners whose notes were paid and who received reconveyances prior to the effective date of the disclaimer on January 18, 1954.

No such question as to the right of the trustee, or the beneficiary, to bring the action arises in connection with the notes which were not paid off, or the trust deeds thereon, on the date of filing of the disclaimer. As to those, the trustee had, and has, a clear, present, existing interest in the real property and in its rights under the trust deed; and just as clearly the beneficiary had, and has, a present, existing interest in the notes and a contingent interest as beneficiary under the trust deeds in the real property; and just as clearly the obligor on the notes and trustors on the trust deeds (the owner or buyer of the property) had a present existing interest in the notes, the trust deeds, and the property covered thereby; and the San Francisco Bank asserted in its complaint a claim of right adverse to all of them. '

While it is true that the terms of the trust deeds provide that the trustee *or* the beneficiary may appear on behalf of the trustor, in any suit of the type described in the trust deeds, it is also true that there is nothing in the

trust deeds which prevents both of them from so appearing, Calif.Civ.Code, § 860, particularly when their interests are different, and where, as here, they seek a title quieted against claims by San Francisco Bank which are adverse to the interest of each of them and of the trustors.

■ For the foregoing reasons it is clear, and I so hold, that as class representative, both the Title Service Co. and Long Beach Association are entitled to a judgment as against San Francisco Bank quieting the title for the benefit of, and on behalf of each and all of the trustors, i. e., the "homeowners," as a class, whose notes were *not* paid off and reconveyances *not* executed on the effective date of the disclaimer, on January 18, 1954, unless the summary judgment provisions of F.R.C.P. prevent it, which question will shortly be reached.

There remains for consideration in this connection, the question as to whether or not Title Service Co. as trustee is entitled to a judgment quieting its title to the trust deeds unreconveyed on January 18, 1954, and the Long Beach Association to a judgment quieting its title to the notes unpaid on January 18, 1954, and its interest in the real property under those notes and trust deeds. Unless the federal summary judgment procedure prevents it, it is my view that each of them is entitled to such a judgment.

■ In the first place, the title of the homeowner, which is quieted, flows from payments by him to the Long Beach Association on the homeowners note; that the Long Beach Association, in turn, by terms of the notes and trust deeds, then has the duty to execute a request for reconveyance to the Title Service Co. as trustee; that the Title Service Co., upon receipt of such request, then has the duty to execute a reconveyance. It is by that chain of events culminating in the reconveyance of the title to his real property, that the homeowner secures the end result, i. e., a title free from any claim arising out of his execution of the notes and trust deeds. That *is the end result of the disclaimer filed by San Fran-*

*cisco Bank,* and *is the end result* sought in the cross-claims to quiet title of Title Service Co. and Long Beach Association as to their *third* cause of action. It follows as a matter of logic that if the end result is valid, then all the intervening steps are valid also. So, the homeowner being entitled to a judgment quieting his title, after the effective date of the disclaimer, by San Francisco Bank, the property right of the Long Beach Association to receive the money on the notes, and its right to execute requests for reconveyances, and the property right of the trustee, Title Service Co., to honor such requests and to execute reconveyances, which is the final step, and to hold the legal title pending such step, are, of necessity, legal and valid and entitled to be, and are, quieted as against the claims of San Francisco Bank. Section 994 of the California Civil Code gives further force to this conclusion. It provides as follows: "Instruments essential to the title of real property, and which are not kept in a public office as a record, pursuant to law, belong to the person in whom, for the time being, such title may be vested, and pass with the title."

As seen from memorandum of November 30, 1953, 117 F.Supp. 259, at page 287, the San Francisco Bank has as security a sum in excess of $600,000 over and above any possible liability which could exist on the conservator's notes of $6,300,000 which are the subject matter of the original complaint in this action, No. 13979.

■ Furthermore, by the collection agreement hereinbefore set forth in full by text, the Association is made the agent of the San Francisco Bank for the purposes of collecting on the notes which are secured by trust deeds and has a right to retain such collections until the occurrence of certain contingencies which are not indicated to be present by any of the pleadings. Having such right as agent, it also has the right to execute requests for reconveyances, and the Title Service Co. has the right to rely thereon and to execute reconveyances.

 The allegations of San Francisco Bank, in its fifth cause of action, on their face would appear to be an attempt to disaffirm that agency. But, by its disclaimer, the San Francisco Bank has effectively reaffirmed that agency as to all of the notes and trust deeds therein described, which are all of the notes, paid and unpaid, and all the trust deeds, reconveyed or not, involved in the cross-claims for quiet title, and are listed separately in the exhibits attached to documents concerned with the motions for summary judgment.

On the basis of the agency alone the property right of Long Beach Association to receive payments on all the notes and trust deeds so described, and the property right to execute requests for reconveyances on the trust deeds, and the property right of the trustee, Title Service Co. to hold the legal title and to execute reconveyances on the request of Long Beach Association, as well as the property right of the trustor to receive reconveyances, are legalized so as to give them the right to have the title to such property rights quieted, as against the adverse claim of prior lien and superior right asserted by the San Francisco Bank, made in the fifth cause of action of its complaint.

Hence, it is clear to me, and I conclude, that Long Beach Association as payee on the notes of the individual borrowers, and as beneficiary under the trust deeds, and Title Service Co. as trustee under the trust deeds, are also entitled to a judgment against San Francisco Bank quieting the title of each of them as to notes and accompanying trust deeds which remained unpaid and unreconveyed on January 18, 1954.

The foregoing leaves undisposed of the cross-claim of Home Investment Co. and for reasons which presently appear I am of the opinion that they are entitled to a judgment quieting the title on behalf of themselves and their successors as to the 174 parcels involved, and also to such a judgment, as representatives of the class of all of the other homeowners who paid their notes and secured reconveyances prior to the effective date of the disclaimer, on January 18, 1954.

 The Home Investment Co. asserts as to the 174 parcels upon which it filed interpleader-interventions that the judgments and orders made in 5421 are valid final judgments as to it and as representatives of a class of all of the remaining 51 separate interpleader-interventions who or which received similar judgments. But regardless of the validity or invalidity of those orders, the disclaimer sets at rest the right to a quiet title of all of those who interpleaded in 5421–5678, as well as all others who paid their notes and received reconveyances subsequent to the assignment by Ammann as conservator of their notes and trust deeds to the San Francisco Bank and prior to the effective date of the disclaimer, on January 18, 1954.

 As to all that class, they come within the provisions of Rule 23 of F.R.C.P. concerning class actions. What has heretofore been said concerning the right of Title Service Co. and Long Beach Association to appear for members of the class of homeowners whose notes were unpaid on January 18, 1954, is equally applicable to those homeowners represented as a class by the Home Investment Co. whose notes were paid and who secured reconveyances prior to January 18, 1954, and will not be repeated here, except to add that they are all subject to one common peril, viz., the claim of the San Francisco Bank that its claimed lien is valid as asserted in its fifth cause of action as of a date prior to the time of payment of the notes and execution of the reconveyances thereon.

 Nor, in my judgment, is there any question concerning the right of the Home Investment Co. to secure such judgment quieting title, even though they may not presently be the owners of the properties upon which they secured reconveyances, and even though all of the other 2200 or more who secured reconveyances may not presently be the owners of those properties.

■ Quiet title actions under the various sections of the California Code of Civil Procedure are in the nature of actions in equity. The statutory right to determine adverse claim upon either real or personal property is an improvement upon the old bill of peace. Castro v. Barry, 79 Cal. 443, 446, 21 P. 946.

In speaking of a quiet title action the Supreme Court in Sharon v. Tucker, 1891, 144 U.S. 533, 12 S.Ct. 720, 723, 36 L.Ed. 532, in an opinion by Justice Field stated: "The form of the remedy will vary according to the particular circumstances of each case. 'It is absolutely impossible,' says Pomeroy, in his treatise, 'to enumerate all the special kinds of relief which may be granted, or to place any bounds to the power of the courts in shaping the relief in accordance with the circumstances of particular cases. As the nature and incidents of proprietary rights and interests, and of the circumstances attending them, and of the relations arising from them, are practically unlimited, so are the kinds and forms of specific relief applicable to these circumstances and relations.' "

■ If Home Investment Co. and other similarly situated homeowners who paid their notes and received reconveyances prior to the effective date of the disclaimer on January 18, 1954, do not now own the properties, they have parted with the fee title; if they parted with fee title they had to execute a grant deed; if they executed a grant deed, they either expressly or impliedly covenanted and warranted, "That such estate is at the time of the execution of such conveyance free from encumbrances done, made, or suffered by the grantor, or any person claiming under him." Cal.Civ.Code, § 1113. The notes and trust deeds were made by the homeowner, and the claimed assignments thereof were made to the San Francisco Bank by the conservator in the name of the Long Beach Association, which was a person claiming under the right given by the homeowner in the trust deeds and notes. If the claims of San Francisco Bank in the fifth cause of action of its complaint were literally enforced, any homeowner, who since payment of his note to Long Beach Association and receipt of reconveyance from Title Service Co. has sold or conveyed his property, would not be free of the encumbrance of the claimed lien of San Francisco Bank.

By Cal.Civ.Code, § 1460 et seq. the above described covenant is a covenant running with the land, and may be enforced by the grantees.

In the article "Quieting Title" in 44 Am.Jur. par. 53, page 41, it is stated, "There is some difference of opinion as to the right of a grantor with covenants of warranty to maintain an action to remove or prevent a cloud on the title conveyed. A majority of the courts take the view that one who has conveyed real property to another by deed containing covenants of warranty may maintain an action against a third person asserting a title or interest hostile to the covenants for the purpose of removing or preventing a cloud on the grantee's title at least where a part of the purchase money remains unpaid or is withheld by the grantee pending confirmation of his title."

The cases collected at page 711 of 97 A.L.R. do not all turn upon the question of whether or not any purchase money remains unpaid. But they do give illumination to the reason for the rule that a vendor may bring a suit to quiet title even though he has parted with the title.

■ As pointed out in Ely v. Wilcox, 1870, 26 Wis. 91, the obligation of a grantor to his grantee under a covenant of general warranty of title would not be fully performed by his paying back the purchase money, with interest, since the letter and spirit of the covenants require him to defend and make good the title which he purported to convey; and in order to do this effectually, he must have the right to come into a court of equity to establish that title.

In Jones v. Nixon, 1899, 102 Tenn. 95, 50 S.W. 740, 742, holding that one who had conveyed land with full cove-

nants of warranty could maintain a suit in equity to prevent the consummation of a proceeding that would cloud his grantee's title, the court stated: "Jones is bound, by the covenants of his deed, to defend and protect the title of his several vendees, and he ought to be allowed to do so, if he chooses, by an aggressive anticipatory action, rather than wait and make defense to the prospective suit or suits of him who is about to consummate proceedings that will cast a dangerous cloud upon that title. He is undoubtedly an interested party. In reality, it may turn out that he, of all persons, is the one most concerned in the dissipation of the impending cloud, and, being so, a court of equity will not be slow to come to his relief."

In Owen v. Paul, 16 Ala. 130, the court pointed out, as a further reason for granting the complainant equitable relief, the fact that, since the conveyance by the complainant, title had passed through the hands of numerous purchasers who were dependent upon the complainant's title for their protection, and on failure thereof each of them must seek indemnity from the other.

██ It must be remembered in this connection that there are about 2200 parcels of land involved and as many separate owners. The observations and conclusions expressed in Yuba Consolidated Gold Fields v. Kilkeary, 9 Cir., 206 F.2d 884, with relation to equitable jurisdiction based on multiplicity of suits and class actions in a bill of peace are pertinent in this connection.

It must also be remembered that the disclaimer is made for the benefit of *whoever* owned the title to the properties involved on its effective date. It is of the very essence of equity that 2200 separate individuals should not be required to file separate suits, when the same result can lawfully be obtained in one suit, as here.

From the foregoing it is my conclusion that Home Investment Co. is properly before the court on behalf of itself and its successors in title, and on behalf of, and as a representative of each and all that class of homeowners and their successors in title, who, or which, prior to January 18, 1954, the effective date of the disclaimer, paid their notes to Long Beach Association and received reconveyances for their respective properties.

It is, of course, contended that the cross-claims of Title Service Co. and Long Beach Association, as to the *third* cause of action to quiet title in the cross-claim of each, and the cross-claim of Home Investment Co. do not state a claim for relief. Without separate discussion on that subject, it is seen from what has been said, that each of them does, and I so hold; but that each is entitled only to the relief heretofore indicated, unless under the Federal Summary Judgment procedure they are not now entitled to it as a matter of summary judgment, which question I will now consider.

### Can, and Should, Summary Judgment Be Granted Quieting Title?

Rule 56 F.R.C.P. deals with summary judgments. Rule 56(c) provides, inter alia, as follows:

"The judgment sought shall be rendered forthwith if the pleadings, depositions, and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Several "material facts" are involved: (1) does San Francisco Bank claim any present right, title, lien, interest or estate in, to or upon any or all of the property, the title to which is found to be quieted as hereinbefore set forth? (2) Did the homeowners who secured reconveyances prior to January 18, 1954, pay the amount of their notes to Long Beach Association? (3) Did Long Beach Association execute requests for reconveyances on such notes and their accompanying trust deeds to Title Service Co. as trustee? (4) Did Title Service Co., as trustee, execute reconveyances on all of the notes and trust deeds where requests were made prior to January 18, 1954?

**434**

■ Items (2), (3) and (4) are alleged to be true by the verified pleadings of Long Beach Association, Title Service Co. and Home Investment Co., and by the verified supporting papers on their motions for summary judgment. None of such facts are denied. There is, therefore, no "genuine issue," as to them.

■ As to question numbered (1) above stated, there can be no "genuine issue" as to that fact in view of the disclaimer of the San Francisco Bank.

There is no dispute as to other material facts viz., the execution by the Los Angeles Bank as predecessor of San Francisco Bank of the 'Collection Agreement'; the assumption and recognition by San Francisco Bank of the obligation of the collection agreement; the continued collection by Long Beach Association and the continued payment by trustors on the notes and trust deeds upon which reconveyances were not made prior to January 18, 1954; the holding by Title Service Company of the legal title as trustee of the real property and the interest of the Long Beach Association as beneficiary on the trust deeds and unpaid notes and trust deeds which were not paid off prior to January 18, 1954; and the assertion by San Francisco Bank in its Fifth Cause of Action of the complaint herein of a claim adverse to the title and rights of those seeking to quiet title and those on whose behalf title is sought to be quieted. Hence, there is no genuine issue as to any material fact, either as to the notes which were paid and trust deeds upon which reconveyances were executed prior to January 18, 1954, or as to the notes and trust deeds which have been in process of payment and reconveyance since that date.

From what has heretofore been said, it is seen that, there being no genuine issue as to any material fact, the cross-claimants are entitled to a judgment as a "matter of law" on the quiet title phases of this litigation as heretofore stated.

■ While summary judgments do not find great favor, nevertheless this is an instance where the situation is clearly within the Federal Rules of Civil Procedure for summary judgment, and certainly this complicated litigation with its quagmire of pleadings is one where, if ever, the rule permitting summary judgments ought to be permitted to be given the force and consequences it was intended to have.

Section 54(b) of the Federal Rules of Civil Procedure deals with judgment upon multiple claims. It provides as follows:

"Judgment Upon Multiple Claims. When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, the court may direct the entry of a final judgment upon one or more but less than all of the claims only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment."

Here, if ever, the above rule should be given effect.

The questions resolved in this memorandum have plagued this and related litigation from its inception, in May 1946. Questions relating to the thousands of those who were buyers of homes and payors on notes secured by deeds of trust, have arisen at every turn, and have protruded into almost every hearing and every document filed in this and in 5421–5678, the record of which, on appeal, comprised more than 12,000 printed pages. And while 51 interpleader-interventions (each a separate suit), resulted from such controversies, it has been the earnest endeavor of this court, by the separate judgments in them, and by the turn-back order of January 23, 1948, 14 F.R.D. 273, at page 315, and by the Orders of March 13 and March 26, 1948 (App. A and B), as well as many other interim orders, to preserve the rights of the thousands of persons who innocently dealt with all, or various, of the parties to this litigation, and to not create or permit any situation which would require them to each get counsel, and pursue their separate protracted and

prolonged ways through litigation in some court or another, to secure that which should have been long ago eliminated from this litigation; and which could have been eliminated had various parties not persisted in their determination to have everything decided their way, or not at all, and without regard to the consequences to those who will now be secured in their quiet title.

 The order for turn-back of the Association, of January 23, 1948 and the Orders of March 13 and 26, 1948 (Appendixes A and B) were, in my judgment, then sufficient to accomplish those purposes and were, in my opinion, valid final appealable orders. None of them were appealed from, notwithstanding which, the appellate court in its mandate on the appeal from another order (of injunction), directed this court to make orders vacating or reversing certain orders not appealed from and, in my judgment, not appealable under the law. Nevertheless I felt it my duty to obey the mandate as I interpreted it, 117 F.Supp. 259. None of the parties sought clarification or recall of the mandate by the court which issued it, or its review by certiorari in the Supreme Court. By that mandate the settlement of titles, which I thought settled, was questioned by the parties. But by judgments in accordance with this memorandum they will, it is hoped, be finally settled.

Some place along the line this litigation must be kept manageable, and Rule 54(b) permits it to be done, at least in some measure in this case, by an "express determination that there is no just reason for delay", which I now, also, make, in accordance with Rule 54(b) as interpreted by this Circuit in Wynn v. R.F.C., 9 Cir., 212 F.2d 953.

 From the foregoing it is seen, without further discussion, that a judgment in favor of San Francisco Bank on its fifth cause of action as pleaded, would adversely affect Home Investment Co., Title Service Co., and Long Beach Association and that therefore, Home Investment Co., Title Service Co. and Long Beach Association, are entitled to intervene in this action under Rule 24 (a) (3) F.R.C.P., which reads as follows:

"(a) Intervention of Right. * * * (3) when the applicant is so situated as to be adversely affected by a distribution or other disposition of property which is in the custody or subject to the control or disposition of the court or an officer thereof. As amended Dec. 27, 1946, effective March 19, 1948."

To summarize my conclusions to this point, I hold:

1. That the cross-complaint of the Title Service Co., by its *third* cause of action *states a claim for relief* to *quiet title* as against San Francisco Bank, (1) on behalf of itself as to all of the trust deeds described therein, and, (2) on behalf of the trustors on each of said trust deeds as a class; accordingly, the motion (No. 7 supra) of San Francisco Bank to *vacate* the order granting leave to Title Service Co. to intervene and to strike its complaint in intervention is *denied*; and the *motion to dismiss* the complaint in intervention is denied *as to the third cause of action* in the complaint of Title Service Co. (The motion to dismiss the remainder of its complaint will shortly be dealt with.)

2. The cross-complaint of Long Beach Association, by its *third* cause of action, states a claim for relief against San Francisco Bank, (1) to *quiet title* on behalf of itself as to all of the notes and trust deeds securing them wherein it is named as beneficiary described in said complaint, and, (2) on behalf of, and as representative of the class of, the payors on said notes who are trustors under said trust deeds; accordingly, the motion (No. 6, supra) of San Francisco Bank to *dismiss* the cross-claim of Long Beach Association is *denied* as to the *third cause of action in said cross-claim,* and the motion to *strike* said cross-claim is likewise *denied* as to the *third cause of action.* (The motion to dismiss and strike the remainder of the cross-claim of Long Beach Association will shortly be dealt with.)

3. The cross-complaint of Home Investment Co. for quiet title states a claim for relief to quiet title against San Francisco Bank, (1) on behalf of itself and, (2) on behalf of, and as representative of the class of those described therein, whose notes were paid and reconveyances issued prior to January 18, 1954; accordingly, the motion (No. 4, supra) of San Francisco Bank to *dismiss* the cross-claim of Home Investment Co. is *denied*; and the motion of San Francisco Bank to *strike* said cross-claim and drop Home Investment Co. as a party to the action is *denied*.

4. The *motions for summary judgment* (No. 3, supra) of Title Service Co. and Long Beach Association, to quiet title, *are granted:* (1) on behalf of each of them respectively, as their interests appear, in and to the notes which were *not* paid prior to January 18, 1954, and in and to the trust deeds upon which reconveyances had *not* been executed prior to January 18, 1954; (2) on behalf of each of them, insofar as their interest may appear, in and to the real property covered by the notes and their accompanying trust deeds which were *not* paid on or prior to January 18, 1954; (3) in and to the real property covered by the notes and trust deeds, on behalf of each member of the class of "homeowners," whose notes were not paid or trust deeds reconveyed on January 18, 1954, as the interest of each member of that class appeared on January 18, 1954.

The motion of Long Beach Association *for summary judgment* to quiet title to the money received by it from the "homeowners" on the described notes and trust deeds prior to January 18, 1954, is *granted*; The motion of Title Service Co. for *summary judgment* to quiet title to the requests for reconveyances on the described notes and trust deeds, upon which it executed reconveyances prior to January 18, 1954, is *granted*; the *motion* of *Long Beach Association* and *Title Service Co.* to quiet title to the real property on behalf of each of them, and on behalf of the "homeowners" who paid their notes and secured reconveyances prior to January 18, 1954, is *denied*.

5. The *motion* of Home Investment Co. *for summary judgment* (No. 3, supra) is granted, (1) as to the *174 parcels* on behalf of itself and, (2) its successors in title to said properties, and, (3) on behalf of itself and, (4) as a representative of the class of all those, and (5) their successors in title, who paid their notes to Long Beach Association and secured reconveyances prior to January 18, 1954 and after May 20, 1946. The detailed description of such notes, trust deeds and the real property covered thereby is likewise found in the moving papers for summary judgment. The motion for summary judgment by Home Investment Co. is *otherwise denied*.

The parties have argued many other questions orally and in the briefs. I have examined them but find it unnecessary to discuss or pass upon them, in view of the foregoing opinions and conclusions.

### Summary Judgment as to "Official Defendants"

The foregoing discussion does not dispose of the claim of Title Service Co. and Long Beach Association that they are entitled to summary judgment quieting title against those who have been described in the combined litigation, for lack of a more convenient term, as "Official Defendants." They have appeared herein by filing (1) a Motion (No. 2) to quash service of summons, and (2) objections to motions for summary judgment.

In treating of the objections to motion for summary judgment, I will deal with them at this stage of this memorandum, only insofar as they are concerned with the *third* cause of action of the cross-complaint of Title Service Co. and the *third* cause of action of Long Beach Association (the quiet title counts). For reasons which will hereafter appear I will not at this point deal with the motion to quash service of summons, except as to the Administrator of Veterans Affairs.

The Home Loan Bank Board, William K. Divers, J. Alston Adams, Kenneth G. Heisler, O. K. LaRoque, Federal Savings & Loan Insurance Corp., A. V. Ammann, George K. Bramley and Carl R. Gray, Jr., (the "Official Defendants") filed an opposition to the three motions for summary judgment on the following grounds: (1) the court lacks jurisdiction of the subject matter of the action; (2) the cross-claims fail to state any case or controversy within the jurisdiction of a federal court; (3) the cross-claims of Long Beach Federal Savings & Loan Association, Title Service Co., and Home Investment Co. fail to state any claim upon which any relief can be granted against these defendants; (4) Home Investment Co. is not a proper party to maintain this purported class action; (5) none of these defendants now asserts or ever has asserted any claim of right, title or interest to any of the property referred to in said motions for summary judgment; (6) the alleged claims of movants have been finally determined adversely to them by the Court of Appeals for the Ninth Circuit and are res judicata.

The objection was accompanied by a memorandum of points and authorities and affidavits of Wm. K. Divers and A. V. Ammann in support thereof. Affidavits also accompanied the motions for summary judgment and the motions themselves incorporated considerable of the record in the consolidated case 5421–5678. Hence the motions for summary judgment and the opposition thereto are both "speaking" motions.

As hereinbefore seen, without being again repeated, the *third* cause of action of the cross-claims of *each*, the *Title Service Co.* and *Long Beach Association*, concerns property located in this district. The question on the objections to summary judgment turns on whether or not the "Official Defendants" or any of them *did, do,* or *can* claim any interest adverse to the cross-claimants in or to the property involved, which asserted adverse interest can be reached in a quiet title action under the California law.

If such asserted adverse interest involves merely the application of laws or regulations of a government agency, then such interests are not the subject of adjudication in a quiet title action. Devine v. City of Los Angeles, 202 U.S. 313, 26 S.Ct. 652, 50 L.Ed. 1046.

Of the "Official Defendants," I fail to see how or in what way the Administrator of Veterans Affairs can be concerned with the matter of titles to homes or any of the transactions involved on the notes or trust deeds described in any of the cross claims. The *motion to quash* is granted as to him.

The Home Loan Bank Board was originally created by statute on July 22, 1932, 47 Stat. 725; 12 U.S.C.A. § 1421 et seq. Its functions, as delineated in that Act, were supervisory of the Federal Home Loan Banks which were also authorized to be created under that statute.

On June 13, 1933 Congress created the Home Owners Loan Corporation, 48 Stat. 128; 12 U.S.C.A. § 1461 et seq. The Home Owners Loan Corp. was a sue-and-be-sued corporation, 12 U.S.C.A. § 1463, and was under the direction and supervision of the Home Loan Bank Board. The Home Owners Loan Corp. was authorized to loan money on real property, including homes. By the Homeowners Loan Act of 1933, last above mentioned, the Home Loan Bank Board was authorized to provide for the organization and regulation of Federal Savings and Loan Corporations, 12 U.S.C.A. § 1464, which were authorized to loan money on the security of first liens upon homes or combination of homes and business property within 50 miles of their home office. Such is the Long Beach Association.

By Reorganization Plan No. 3, effective July 27, 1947 (12 F.R. 4981) the Board of Directors of the Home Owners Loan Corp. was abolished and all of its functions transferred to the Home Loan Bank Board. On June 30, 1953 Congress abolished the Home Owners Loan Corp., 67 Stat. 126, within a time to be fixed by the Home Loan Bank Board (see note following 12 U.S.C.A. § 1463), and fixed a period of limitation within which claims

might be filed against the Home Owners Loan Corp. or its successor. That statute also provided "with respect to any action, suit, or other legal proceeding commenced against the Corporation prior to the date of its dissolution, the Corporation shall continue a body corporate for the purpose of defending such suit and for no other purpose, and service of subpena or other process in such proceeding may be made upon the Corporation by serving the same on the Secretary to the Home Loan Bank Board." That statute also provided that effective as of the date of the dissolution of the corporation the title to any and all real property remaining in the corporation on such date is transferred to the United States.

It does not appear from the cross-claim of Long Beach Association or of Title Service Co. as to the *third* cause of action in each of the cross-claims, that any adverse claim to either the notes or the trust deeds or the property covered by the notes and trust deeds was ever asserted by the Home Owners Loan Corp. So far as I am able to ascertain, from such pleadings and those incorporated in them by reference, the only connection of the Home Loan Bank Board with this involved matter, was in its supervisory capacity, as the Home Loan Bank Board, and not as the successor in interest of the Home Owners Loan Corp. The Home Loan Bank Board did appoint Ammann as conservator, who seized the property involved; it did create the San Francisco Bank; it does have supervisory power over the San Francisco Bank and the Long Beach Association; and it must be presumed that it authorized the San Francisco Bank to execute the disclaimer.

But counsel has not called my attention to any provision of the statutes, and on independent research I have been unable to find any, which authorizes the Home Loan Bank Board to, itself, seize property or claim a title to any property which its conservators or receivers may take, except where it has assumed the functions of the Home Owners Loan Corp. which, so far as I have been able to ascertain from the pleadings, as hereinbefore indicated, are not involved in any of the conduct under examination or challenge in this case since its inception in 1946. That being so, the Home Loan Bank Board did not, does not, and cannot make any claim of title to the "property" involved in the third cause of action of each, Title Service and Long Beach Association, which is adverse to those cross-claimants.

Under the doctrine of Devine v. City of Los Angeles, supra, the Home Loan Bank Board is thus entitled to have the *motion* for summary judgment denied on the third cause of action of both Title Service Co. and Long Beach Association, and it is denied.[4]

The members of the Home Loan Bank Board, as such members, fall within the same category as the Home Loan Bank Board, and are entitled to have *summary judgment* denied *as to them*. Such members, as individuals, have never made any claim to personal ownership, as individuals, of any of the "property" involved. And I cannot read the long and complex allegations of either Title Service Co. or Long Beach Association as alleging anything to the contrary. *No summary judgment* quieting title on the motions

---

4. The cross-claims of both Title Service Co. and Long Beach Association were filed in 1952, which was before the Act of June 30, 1953, 67 Stat. 126, which abolished the Home Owners Loan Corp. but preserved causes of action then pending against them. There is presently pending in Congress, and I am informed it has passed the House, H.R. 7839, which contains a provision authorizing suits against, and by, the Home Loan Bank Board and Federal Savings & Loan Ins. Corp. In the event that Act is finally adopted, or in the event counsel can point out any provisions of law or allegations in their cross-claims, which show the right or power of the Home Loan Bank Board to own property, whether under the statute creating the Home Loan Bank Board or under the statute creating the Home Owners Loan Corp. or otherwise, I shall be glad to hear them and reconsider the conclusion immediately above expressed.

therefore can be entered as to them as individuals, and the motions are denied.

■ The Federal Savings and Loan Insurance Corporation is likewise a creature of statute, June 27, 1934; 48 Stat. 1255; 12 U.S.C.A. § 1724 et seq. While it is a "sue and be sued" corporation, 12 U.S.C.A. § 1725, its entire interest in any of the notes, trust deeds or properties covered thereby is one which can come into being only in the event of the casualty which is insured against. The casualty is not alleged to exist or to have at any time existed. The right is a right to be subrogated to the interest of the insured on the happening of such casualty. Such casualty may never occur. It is too speculative to be said to be an "adverse" claim which can be quieted in an action as stated in the *third* cause of action of the cross-complaints of Title Service Co. and Long Beach Association. Its governing body is composed of the same persons who are members of the Home Loan Bank Board. Their claim as such members can be no greater than the Insurance Corporation; and no allegation can be found which can be construed to charge that they, as individuals, are claiming any of the property involved. Thus the *motions for summary judgment* as to the Federal Savings and Loan Insurance Corp., its directors, as directors and as individuals, *are denied.*

■ A different situation exists as to Ammann and Bramley. Ammann was Conservator, and Bramley was the deputy conservator. Ammann *did take* and *have possession* of all the trust deeds and notes involved and *did execute assignments* and transfers thereof to the San Francisco Bank. As appears in the memorandum of November 30, 1953, 117 F.Supp. 259, 315, the association was returned to its officers and directors on January 24, 1948, under Home Loan Bank Board Order No. 388, and the order of this Court in 5421–5678. As also appears therefrom and from the allegations of the various pleadings in this case, there are contentions made that Ammann continued to be conservator for the Long Beach Association after such return and orders directing the return. However, one of the grounds of objections to the motion for summary judgment is that Ammann and Bramley do not now assert any claim of right, title or interest to any of the property referred to in the motions for summary judgment. In view of the fact that there was at one time the adverse claim of Ammann as Conservator and Bramley as his deputy, to the property, and that they now disclaim such claim, the cross-claimants Title Service Co. and Long Beach Association, *are entitled to summary judgment on their Motions for Summary Judgment* to the same extent and manner as is ordered granted against the San Francisco Bank.

The other five points made in the opposition filed by the "Official Defendants" are disposed of, insofar as Ammann and Bramley are concerned, in accordance with what has heretofore been said in connection with the motions for summary judgment as to San Francisco Bank.

■ It does not appear that service was made on the "official defendants" of the cross-claim of Home Investment Co. or the motion of Home Investment Co. for summary judgment; accordingly, the motion of Home Investment Co. for summary judgment as to all "official defendants" is denied.

Motion to Vacate Order Granting Leave to Title Service Co. to Intervene and Motion to Dismiss Its Complaint in Intervention.

In view of the fact that, for the reasons which hereinbefore appear, it is my judgment that the cross-complaint of the Title Service Co. in intervention states a cause of action as to its *third* cause of action, it does not seem to me to be appropriate to vacate the order granting leave to file the complaint in intervention and the *motion to vacate is denied.*

■ The motion to dismiss the complaint in intervention, however, poses a question as to whether or not the first two causes of action for Title Service Co. state claims for relief.

The first cause of action is stated to be an action in interpleader. By it the Title Service Co. interpleads, or attempts to interplead, the 8000 trust deeds on which it is, or at one time was, the trustee, and the legal title to each parcel of property covered by the trust deed. It appears affirmatively that at least 1717 of such trust deed notes had been paid off and title reconveyed on the date of filing the complaint in intervention. The complaint has a long recitation of the history of this litigation and contains many allegations concerning the invalidity of the appointment of Ammann as well as the invalidity of his actions, (assuming he were lawfully appointed), while he was acting as conservator, particularly with reference to assignments of notes and trust deeds to the San Francisco Bank and with relation to granting loans which it is asserted are, and were, in violation of the law and regulations applicable thereto.

The second cause of action reincorporates most of the allegations of the first cause of action and is stated to be an action for declaratory relief wherein it is alleged that a controversy exists between the cross-complainant and the defendants as to the rights and duties of the cross-complainant Title Service Co. with relation to trust deeds which have been paid off and their notes, as well as trust deeds and notes which are still unpaid and upon which reconveyances have not been granted.

A search of the long and tedious complaint and many other pleadings to which it refers and incorporates by reference, fails to disclose how Title Service Co. is in any position to challenge the validity of the appointment of Ammann or the validity of his acts as conservator, in view of the fact that the title to the properties in which they are involved and concerned is, and will be quieted, under this memorandum order.

It would be unduly burdensome to set forth in this memorandum any attempted complete analysis of all of the allegations in the complaint of the Title Service Co., either in its first cause of action for interpleader or its second cause of action for declaratory relief. I will content the record by simply saying that I cannot see how it states a claim for relief in either the first cause of action or the second cause of action. This is particularly so in view of the fact that its immediate concern and apparently its only concern, arose by virtue of the fact that it was acting as trustee under trust deeds holding legal title as security for loans which were made by the Long Beach Association. Those trust deeds and notes and the obligations and rights of the Title Service Co. are now out of the way, or will be as soon as a decree is entered upon the judgment for quieting title in accordance with this memorandum opinion.

The motion of San Francisco Bank to dismiss the Title Service Co.'s complaint as to the *first* and *second* causes of action on the ground that no claim for relief is stated, is well taken and is *granted*.

For the reasons hereinbefore set forth in connection with the motions for summary judgment, the motion of San Francisco Bank to dismiss the *third* cause of action as to the Title Service Co. *is denied*.

The motion to dismiss is made on behalf of the San Francisco Bank: It is not made on behalf of the 63 other parties named and designated as cross-defendants, or the 8000 "Doe" defendants which are named in the caption of the complaint as cross-defendants in intervention. While it ordinarily does not behoove a court to act, except on motions of the various parties after they have been served with process, I cannot escape the fact that in the over eight years that this, and related, litigation has been pending, I have become familiar with all of the contentions of the various parties, nor can I escape the fact that the litigation, unless cut down to size, will reach out as did 5421–5678, until there is an almost incomprehensible number of parties and issues involved in an unmanageable volume of pleadings and documents.

And while none of the parties except San Francisco Bank has filed a motion to

dismiss, San Francisco Bank, nevertheless, has filed a motion to strike the pleading. I do not think the cross-complaint of Title Service Co. states a claim for relief as to the first cause of action in interpleader or the second cause of action for declaratory relief *against any of the parties* who are named as cross-defendants, and all of which are identified in the body of the pleading. Title Service Co. has got what it has complained about for eight years—a quiet title; and I can see no possible reason for compelling all the cross-defendants who are designated, to await service of process upon them, before doing what is so plainly my duty to do now. For that reason the motion to *dismiss* the *first* and *second* causes of action of the complaint is *granted as to all parties,* and the motion of the San Francisco Bank to *strike* the first and second causes of action is *denied.*

As to the third cause of action and the parties who were not served and have not appeared by either a motion to strike or to dismiss, it does not appear from the pleadings how any of the parties other than those against whom summary judgment for quieting title has been granted have, or can have, any claim which is adverse to the claims of the cross-complainant Title Service Co. which are ordered quieted. For that reason, the Court, of its own motion, will *dismiss* the *third* cause of action *as against all parties except the San Francisco Bank, A. V. Ammann and George K. Bramley,* against which and whom the summary judgments will be granted as hereinbefore stated.

### The Robert H. Wallis Intervention (No. 9)

 This matter is now before the court on a motion of the plaintiff San Francisco Bank to vacate the order granting leave to Wallis to intervene and to strike the pleading or, in the alternative, to dismiss said complaint in intervention.

On October 13, 1952, motion for leave to intervene by filing a complaint in intervention in the nature of interpleader was filed by Robert H. Wallis. There-after, on January 26, 1953, by written order, that motion (among others) was granted. On January 29, 1953, the complaint in intervention and in the nature of interpleader to quiet title and for declaratory relief was filed by Robert H. Wallis.

As with all other pleadings in this complicated litigation, the complaint is very long, being 60 typewritten pages without the exhibits. It recites the history of the litigation in this and related cases and by reference incorporates former pleadings in action 5421 filed by Wallis as well as the answers thereto.

In spite of the length of the pleading the substance of the claim of Wallis can be briefly stated. Following the dissolution of the Los Angeles Bank and prior to the seizure of the Long Beach Association by Ammann as purported conservator, the directors of the Long Beach Association, by resolution, indicated that they feared retaliation against the Association for their efforts in opposing the dissolution of the Los Angeles Bank and adopted, by that resolution, the policy of employing legal counsel to conduct appropriate legal proceedings, and appropriated $100,000 for that purpose. Pursuant to the resolution, a cashiers check in the sum of $50,000 was thereafter issued to Robert H. Wallis who was employed as counsel. That check was in the possession of Wallis at the time of seizure, was interpleaded by Wallis in court in action 5421, by filing his cross-complaint in the nature of interpleader, claiming that he was entitled to a certain portion of it; that Ammann, as conservator, was claiming all of it and that the Long Beach Association was claiming a portion of it, but claiming also that they were entitled to have the services of Wallis for the portion to which it, (the Long Beach Association), was not entitled. In the appeal disposed of by the U. S. Court of Appeals for this Circuit in Home Loan Bank Board v. Mallonee, 196 F.2d 336, and in the mandate following that appeal, it was ordered that the pleadings of Wallis be dismissed. The memorandum of this court, filed No-

vember 30, 1953, construing the mandate and directing the making of orders in pursuance thereto, required that an order be made dismissing the cross-claim of Wallis, and to provide for the return to Wallis of the $50,000 cashiers check. No decision has ever been made on the merits as to whether Wallis is entitled to all or any of the $50,000 cashiers check, or as to whether Long Beach Association is entitled to all or any, and no decision has ever been made on the merits as to whether or not Ammann was entitled to all or any of it. Ordinarily, with the return of the Association, ordered by the Home Loan Bank Board by its order No. 388 and this court's order of January 23, 1948, from Ammann as conservator, to the Association, one would think that any conflict between the claims of the conservator and the Association would be merged and the right of the Association would be to receive whatever Ammann as conservator was entitled to. But the difficulty with this situation is as pointed out in 117 F.Supp. 259, that some of the "official defendants" in the pleadings in 5421 and 5678 are asserting that Ammann is still the duly appointed and acting conservator of the Association.

But regardless of whatever the contentions may have been, or may still be, as between Wallis, the Long Beach Association and Ammann, I can see no reason for projecting or interjecting that controversy into this litigation which started out as a suit by the San Francisco Bank to collect on the conservator's promissory notes, and to foreclose a claimed lien from the Long Beach Association.

While it well may be that as between the San Francisco Bank and the Long Beach Association controversies may arise of which this court has jurisdiction, or some court may have jurisdiction, as to the validity of the appointment of Ammann and the validity of his acts while acting as conservator, nevertheless it is not possible for me to see how the resolution of such controversies, however they may be decided, can pos-

sibly warrant the interjection into this case of the claims of Wallis or any conflicts to his claim on the $50,000 check. It should be noted that Wallis names as defendants, not only the San Francisco Bank and the officials who were involved one way or another, as well as the official agencies and corporations, but some fifty or sixty-odd others and 8000 Doe defendants.

From an examination of Wallis's complaint and the other pleadings in the whole matter, it is apparent to me that I was in error in granting the motion of Wallis to intervene, and, accordingly the motion of the plaintiff San Francisco Bank to vacate the order granting leave to Wallis to intervene is granted. If Wallis has a cause of action in the nature of interpleader it may be settled in a separate suit and there is no reason in law or logic to further complicate the within action which, in order to reach the adjudication stage, will have to be whittled down to as simple a lawsuit as possible—and it will still be complicated.

Motion to Dismiss Cross-Claim (No. 6), and to Dismiss Third Party Complaint (No. 8), and to Strike From Answer (No. 10), of Long Beach Association.

The cross-complaint is 629 pages long with its exhibits. It is stated in seven different causes of action; all except the third cause of action deal with the history of the controversy between the Long Beach Association, the Home Loan Bank Board, the Conservator, the San Francisco Bank, the Los Angeles Bank, the Portland Bank, and many other officials, persons, associations and entities.

In sustaining the right of the Long Beach Association to have its motion for summary judgment granted, as hereinbefore in this memorandum indicated, I, of necessity, concluded that it stated a claim for relief as to its *third* cause of action.

All of the other causes of action in its cross-claim go more or less to the merits of the whole controversy, and are severable from the third source of action.

The third party complaint of Long Beach Association contains much of the material, by reference, as its cross-claim, and prays for 15 different kinds of relief. The answer of Long Beach Association sets up 28 separate defenses. Like the cross-claim, the allegations go largely to the merits.

The San Francisco Bank has insisted from the beginning that the motion to remand this case to the state court should have been granted and that this court is proceeding without jurisdiction.

If the San Francisco Bank is right in that contention, the case is now postured, or will be upon the entry of the final judgments made in accordance with this memorandum to test by appeal the correctness of the denial of the motion to remand. It is anticipated that with the case in that posture no opportunity will be missed by any of the parties to take this case to the appellate court and determine the question of jurisdiction. In the event that the appellate court should determine that I was in error in denying the motion to remand it will then become unnecessary to impose upon all the parties to this litigation the consequences of any decision on the motions to dismiss the other six causes of action of the cross-complaint of the Long Beach Association, or to dismiss or strike its third party complaint and its answer. The legal question on the motion to remand is a comparatively simple one, and there is no need to complicate the appeal thereon by burdening the record with a laborious analysis which would be required to intelligently dispose of the dozens of complex and serious questions raised by the cross-claim and third party complaint of Long Beach Association. If the appellate court affirms the denial of remand, it will then be the time to undertake and to decide those questions. If the appellate court reverses the denial of remand, then that task will become unnecessary for this court.

For that reason, pending such appeal, the court will defer any further action on the motions to dismiss, (No. 6, supra) the cross-claim of defendant Long Beach Association as well as to dismiss, (No. 8, supra) the third-party complaint of Long Beach Association, and the motion of plaintiff to strike, (No. 10, supra), from the answer of Long Beach Association, and the motion of the official defendants (No. 2, supra), to quash the service of summons.

Motion by Long Beach Association to Deposit $7,000,000, Cash or Bonds, into Court in Case No. 13979.

Following the filing of the memorandum of this court of November 30, 1953, 117 F.Supp. 259, I prepared and filed an order (Appendix E) dated December 11, 1953, directing the return of collateral in accordance with paragraph 3 [5] of the Mandate of the Court of Appeals filed in 5421–5678, the full text of which mandate appears in 117 F.Supp. 259, at page 264, et seq.

Thereafter, and on December 21, 1953, Long Beach Association filed a motion in the within action (13979) for the retention in court of the original conservator's notes of the face amount of $6,300,-000; and pending, and subject to, final judgment, the government bonds of $5,-300,000 face, and sufficient cash theretofore deposited in court in 5421–5678, which, together with the uncashed and

---

**5.** "3. Dissolve, set aside and vacate the order of said District Court entered the 13th day of March, 1948, insofar as the same requires Federal Home Loan Bank of San Francisco to deposit in the Registry of said District Court promissory notes in the aggregate principal amount of $6,300,000.00, collateral securing the same and any other documents or property deposited by San Francisco Bank pursuant to said order; and return to Federal Home Loan Bank of San Francisco without charge or impairment said promissory notes, together with Government bonds in the face amount of $5,-300,000.00 with all interest coupons attached thereto at the time of deposit and together with cash from the sum in the Registry of said Court sufficient to make the combined total sum of $6,324,098.35, with interest on $6,300,000.00 at 2% per annum from the 10th day of March, 1948 until the date of such release."

accumulated interest coupons on the government bonds, totaled $7,004,498.34, plus 14 cents a day since August 3, 1953. At the same time it filed a written tender of, and produced in court on January 14, 1954, a cashiers check in the sum of $7,004,498.34, and moved to deposit it in court in 13979, upon the condition that the government bonds of $5,300,000, their attached coupons amounting to cash in the sum of $709,633.33 and the sum of $994,865.01 be delivered to the Long Beach Association. It also moved that said cashiers check, instead of being kept in the registry as non-interest bearing cash, be invested in U. S. Government bonds, series of September 15, 1952–67 which bear 2½% interest, which would earn approximately $175,000 per year, or in excess of approximately $40,000 more per year than the total interest accumulating on the conservator's notes of $6,300,000: at the same time it presented an ex parte motion for stay of the order (Appendix E), of December 11, in 5421–5678 directing the return of the collateral to the San Francisco Bank, which motion for stay was granted (Appendix F), pending hearing and ruling by this court on the above described motion for retention of assets in the registry of this court in action 13979 and the above described tender, and until further order of this court.

It is not necessary to repeat here the discussion set forth in 117 F.Supp. 259 with relation to the contention made by Long Beach Association that the money in court in 5421–5678 had already been deposited in court in 13979 by virtue of the previously filed cross-claim in interpleader in 13979.

In that memorandum I indicated my view to be that under the authorities cited by the Long Beach Association it was the duty of the court to interpret the mandate of the appellate court in light of any changed conditions, but expressed the view that the "changed condition," consisting of the filing of action 13979 by the San Francisco Bank, and the complaint in it, was before the appellate court at the time it made its mandate.

After making the order (Appendix E) I prepared a form of receipt in conformity to the conditions of the order, for the San Francisco Bank to sign upon receiving the money and property from the Clerk. But San Francisco Bank has prepared a form of receipt, which is not in conformity with the last above-mentioned order, and which acknowledges the receipt of the bonds, coupons and cash unconditionally, and not as collateral on the conservator's notes; and which gives some credence to the fears expressed by Long Beach Association that San Francisco Bank intends to apply the bonds, coupons and cash to the payment of the conservator's notes and dismiss, or attempt to dismiss 13979 without any opportunity to litigate the claims of invalidity of the conservator's notes, made by the Long Beach Association in its cross-claim and answer filed in 13979. Whether San Francisco Bank can dismiss 13979 involves, among other things, the question as to whether or not State Statutes of Limitation are applicable as against a Federally created corportion, which question is not reached in this memorandum.

As heretofore noted the cross-complaint of Long Beach Association in 13979 has 7 different stated causes of action. Its answer, in addition to denying most, if not all, the allegations of the complaint of San Francisco Bank in 13979, has set up 28 separate defenses. It is immaterial whether or not that answer and cross-claim were before the appellate court prior to the issuance of its mandate in 5421–5678, as it would be repugnant to all ideas of justice and law, that the appellate court intended by mandate in one case, (5421–5678), to summarily decide the merits of another case, (13979), not before them on appeal, and no phase of which had been decided by the trial court so as to posture it for appeal, and thus to preclude any defense by Long Beach Association to action 13979. It is also repugnant to the express terms of the order of that court,

which vacated the then existing injunction, and expressly permitted the San Francisco Bank to prosecute, and the Long Beach Association to appear in, answer, defend and participate in action 13979, 117 F.Supp. 359, at page 291.

From the opinions of the appellate court, and from the mandate, it was obviously the intention in directing the vacation of the order of March 13, 1948 (Appendix A), to put the parties to the notes and those interested in defending them in the same position, insofar as possible, as before making that order. But many things have intervened since the date of the order of March 13, 1948 (Appendix A) and since the date of the mandate in 5421–5678. As heretofore shown, there were thousands of individual notes with trust deeds securing them on separate parcels of property which were held by the San Francisco Bank as security on the conservator's notes; more than 2000 of them have since been paid off; the rest of them are in the process of payment; the San Francisco Bank has executed a disclaimer covering all the notes and trust deeds and property covered thereby, which came into court by the Order of March 13, 1948; the Long Beach Association, the owner of the government bonds on deposit in court and their accumulated coupons which are the equivalent of cash, and of the cash on deposit in court, in an effort to prevent a loss of approximately $40,000 a year of interest on the cash on deposit, has moved to convert the cash into interest bearing government bonds of a sufficient amount to more than offset the interest on the conservator's notes by approximately $40,000 a year.

Paragraph 3 of the mandate was not a direction to unconditionally vacate the Order of March 13, 1948 (Appendix A). Had it been unconditional it would have required the re-establishment of the status quo ante of the parties, which would have called for the return to San Francisco Bank, of all the 8000 homeowners' notes and trust deeds as collateral security on the conservator's notes; which would not, and can not be done;

it did not do so but required only the return of the other property and money which had come into the registry of the court, and that in an amount only to be sufficient to cover as security the possible liability on the conservator's notes.

■■ So it is still my view, as expressed in 117 F.Supp. 259, taking the opinions, the mandate, and the order by the appellate court permitting prosecution of 13979 by the San Francisco Bank and its defense by Long Beach Association, all together, that the conclusion necessarily results, that the return of the collateral as ordered by the appellate court in paragraph 3 of its mandate in 5421–5678 was not unconditional but was to be returned to, and to be held by, San Francisco Bank without impairment, pending final judgment of the within case, (13979).

■■ If it appeared to me, which it does not, that the money and property on deposit in 5421–5678 were to be returned unconditionally to the San Francisco Bank, then it would be my duty, under the law, to view the filing of 13979 by the San Francisco Bank, the filing of the cross-complaint of Long Beach Association and its answer, the disclaimer of San Francisco Bank and the quiet title judgments herein ordered, as well as the motion of Long Beach Association to deposit $7,000,000 interest-bearing bonds in court, to constitute a change of condition, which would require this court to grant the motion made by Long Beach Association to deposit in court in 13979 the $7,000,000 government bonds bearing interest at 2% per annum, to be held in court subject to final judgment in 13979, and to order the return to it, viz., Long Beach Association, of the bonds of $5,300,000 with their attached coupons, and the cash heretofore deposited in court, which belong to it and which have been held in court under the order of March 13, 1948, in 5421–5678.

There is in my view, however, one change of condition which is entitled to be given consideration. As heretofore pointed out, the attached coupons on the

$5,300,000 government bonds amount to cash in a sum in excess of $700,000, and they, together with the sum of approximately $1,000,000 in addition thereto, and the government bonds of $5,300,000 are required to be maintained as collateral security on the conservator's notes; there has never been any question but that those government bonds, their attached coupons and the cash in the last aforementioned sum was, and always has been, the property of Long Beach Association ever since they were received in court, and that the government bonds were the property of the Long Beach Association when received by the San Francisco Bank, either as a depository for safekeeping or as collateral security on the conservator's notes.

In view of the fact that all of such is the property of Long Beach Association, and that by the failure to invest the sum of approximately $1,700,000 in interest bearing government bonds, Long Beach Association is the ultimate loser of the interest on that amount of money, which comes to approximately $40,000 a year; and, in view of the fact that the clear intention of the appellate court, by its opinions, and mandates, was that the funds and property previously deposited in court should be held as collateral security only for the conservator's notes, which are the subject of the suit in 13979, it seems to me that it is in clear compliance with paragraph 3 of the mandate and "according to right and justice" that Long Beach Association be permitted to convert approximately $1,700,000 in cash into government bonds before or co-incident with, making the order which, in my judgment, is required to be made.

That order is, to deny the motion of Long Beach Association to make the deposit in court in 13979 of the $7,000,000 and to vacate the stay of the order in 5421–5678 (Appendix F) on condition that Long Beach Association deposit in court U. S. Government bonds in the sum of $7,004,498.34 plus 14 cents per day since August 3, 1953, in lieu of the $5,300,000 government bonds and their attached coupons and the sum of $994,-865.01, which shall be returned to Long Beach Association upon its deposit of the $7,000,000 in bonds as aforesaid; and that thereupon the Clerk is directed to deliver the above described government bonds in the sum of $7,000,000 with their attached coupons to the San Francisco Bank upon its executing a receipt acknowledging that said bonds are received as collateral security for the payment of the amount, if any, finally adjudged to be due on the conservator's notes of the face of $6,300,000 in action No. 13979 of this court, or finally adjudged to be due in that action in the event the same is remanded to the state court.

In addition to the authority of the cases cited in 117 F.Supp. 259, as to "changed conditions," the foregoing conclusion is reached in the hope that it brings to this phase of the case that which was suggested by Justice Cardozo, when, in speaking for the court in Gully v. First Nat. Bank, 1936, 299 U.S. 109, 117, 57 S.Ct. 96, 100, 81 L.Ed. 70, he said: "What is needed is something of that common-sense accommodation of judgment to kaleidoscopic situations which characterizes the law in its treatment of problems of causation."

If there appears a degree of prolixity in this memorandum, which I have condemned in the pleadings of the parties, it can only be said that the complexities of this litigation demanded it.

Counsel for the parties which have prevailed on the several motions will prepare appropriate findings, judgments, and orders in accordance with the foregoing, and serve the same under the rules.

### Appendix A

Order Requiring Deposit of Certain Notes, Deeds of Trust, U. S. Government Bonds and other Collateral Held by the Federal Home Loan Bank of San Francisco

The motion for Order requiring the Federal Home Loan Bank of Los Angeles, and the Federal Home Loan Bank of

San Francisco to set forth the extent, nature and amount of their respective claims against Long Beach Federal Savings and Loan Association, and upon the determination of the maximum amount of such claims to deposit in the Registry of this Court, from collateral in possession of one or both of said Federal Home Loan Banks, the said maximum amounts of such disputed claims and to redeliver immediately all excess, collateral held by either or both of such Federal Home Loan Banks, together with an Order to Show Cause, issued by this Court February 9th, 1948, requiring and directing the Federal Home Loan Bank of Portland, also sometimes known as the Federal Home Loan Bank of San Francisco, (hereinafter sometimes referred to as the San Francisco Bank), and the Federal Home Loan Bank of Los Angeles, hereinafter sometimes referred to as the Los Angeles Bank, to appear before this Court at the time and place designated in said Order to Show Cause and then and there to show cause why the relief prayed for in said Motion should not be granted and the Orders made as prayed for in said motion. Pursuant to said Order to Show Cause the written return to said Order to Show Cause of the Los Angeles Bank, which return affirmatively requested a portion of the relief asked in said Motion and the written return of the San Francisco Bank, and the written statements of non-opposition and joinder in said motion of the plaintiffs, the Shareholder Members Protective Committee, Paul Mallonee, C. H. Newhouse, and Winnie Bucklin; and defendant and cross-claimant in interpleader, Title Service Company, trustee upon thousands of deeds of trust involved in this proceeding, were filed and presented to this court for consideration, as was also filed the Affidavit of Frank C. Noon, manager of the Los Angeles Branch of the Federal Home Loan Bank of San Francisco. The said Motion and Order to Show Cause having come on regularly for hearing on Monday, the 8th day of March 1948, in Court Room No. 3 of the above-entitled Court, and proof having been made of due service of said Order to Show Cause and of said Motion and of the Notice of Hearing thereof, upon all parties concerned as required by the Order to Show Cause and appearances for the various interested parties were made as follows:

For the defendants Home Loan Bank Board and the individual members of said board, and the defendant A. V. Ammann, individually and as purported conservator, and for the defendant John H. Fahey, specially, James M. Carter, Esquire, United States Attorney; for the defendant Federal Home Loan Bank of Portland, sometimes known as Federal Home Loan Bank of San Francisco, its counsel of record Messrs. Sylvester Hoffman, Irving G. Bishop, and Verne Dusenbery; for the Federal Home Loan Bank of Los Angeles, its counsel of record, Richard FitzPatrick and O'Melveny and Myers by John Whyte; and the plaintiffs, Shareholders Protective Committee, Mallonee, et al., by their counsel of record Westover & Smith by Wyckoff Westover, Esquire, for defendant Robert H. Wallis by his counsel of record, Raymond Tremaine, Esquire; and for Long Beach Federal Savings and Loan Association, by its counsel of record, Charles K. Chapman, Esquire; and counsel for Title Service Company, cross-claimant in interpleader, having filed their written statement of non-opposition and joinder in said motion, and the said matters having been partially heard, were continued to Wednesday, the 10th day of March, 1948; and evidence, both oral and documentary, having been offered and received and the matter having been argued at length, by all parties concerned and the court being fully advised in the premises, from said Petition and the proceedings thereon, from the files, records and proceedings heretofore had in the above-entitled cases, and from evidence both oral and written and the following facts appearing to be true, the Court now finds; as follows:

That on the 29th day of March, 1946, Long Beach Federal Savings and Loan Association had on deposit for safekeep-

ing with the Federal Home Loan Bank of Los Angeles, approximately $8,300,-000 in United States Government Bonds, and that the said Long Beach Federal Savings and Loan Association, was not then indebted to said Federal Home Loan Bank of Los Angeles, in any manner or amount whatsoever.

That the defendant John H. Fahey, the then purported Federal Home Loan Bank Commissioner, allegedly issued Federal Home Loan Bank Administration Orders Nos. 5082, 5083, and 5084, the validity and effect of which orders are disputed and a subject of this litigation.

That as a result of such disputed orders and the attempted enforcement of the same, the Federal Home Loan Bank of Portland, sometimes known as Federal Home Loan Bank of San Francisco, acquired possession of the said $8,300,000 of United States Government Bonds owned by, and the property of the Long Beach Federal Savings and Loan Association.

The controversies and disputes, as set forth in the voluminous pleadings of all of the parties hereto, thereafter arose between various of the defendants, plaintiffs, cross-claimants, and other parties. That on the 20th day of May, 1946, Federal Home Loan Bank Administration Order No. 5254 was purportedly adopted by the defendant John H. Fahey, as a result of which the defendant A. V. Ammann as purported conservator acquired possession of the assets, business, and properties of Long Beach Federal Savings and Loan Association.

That extensive numerous and involved transactions thereafter took place between the defendant Federal Home Loan Bank of Portland, sometimes known as the Federal Home Loan Bank of San Francisco and the defendant A. V. Ammann, purportedly acting as conservator for Long Beach Federal Savings and Loan Association. That as a result of such dealings, the four (4) notes dated June 28th, 1947 for $2,300,000, Exhibit "F" in the affidavit of Frank C. Noon; dated November 22, 1947 for $2,000,-000; Exhibit "G" in said Noon Affidavit;

dated November 22, 1947 for $2,000,-000, Exhibit "H" in said Noon Affidavit; and dated November 24, 1947, for $1,-500,000, Exhibit "I" in the said Noon Affidavit, were all purportedly executed and delivered, as disclosed by said exhibits, in favor of the Federal Home Loan Bank of San Francisco as payee. That the said Federal Home Loan Bank of San Francisco claims to have paid to the defendant A. V. Ammann, as purported conservator, said sum of $6,300,-000, and claims that such payments and such notes are binding obligations to it of the third-party plaintiff, cross-claimant and defendant, Long Beach Federal Savings and Loan Association. That the defendant A. V. Ammann, as purported conservator, attempted to assign, transfer and deliver or pledge, to the said San Francisco Bank, various collateral, allegedly to secure the payments of said above enumerated four (4) notes.

That among such collateral, are the United States Government Bonds, and the notes and deeds of trust hereinafter specifically listed and described in detail. That each and all of said Government Bonds, and notes and deeds of trust were and are the property of Long Beach Federal Savings and Loan Association.

That the evidence adduced at said hearing discloses numerous and various other transactions, dealings, assignments, transfers, and deliveries between said defendant A. V. Ammann and the said San Francisco Bank, the details, nature, extent and amount of which will require an accounting between said institutions.

That among the conflicting claims are the following:

1. The Federal Home Loan Bank of Los Angeles claims that its assets were illegally, unconstitutionally, and unlawfully, taken from its possession under said Orders Nos. 5082, 5083 and 5084, and were used totally or in part by the said Federal Home Loan Bank of San Francisco to make the advancements of cash made by said bank to defendant A. V. Ammann, evidenced by said four (4) notes, Exhibits "F", "G", "H" and "I,"

in the said Noon Affidavit, totaling $6,300,000 and that as a result thereof, the said San Francisco Bank holds said four (4) notes and any and all rights thereunder as a trustee of a constructive trust in favor of said Los Angeles Bank and that it, the said Los Angeles Bank, has a right to trace its assets into said notes, and into the claims arising therefrom against the collateral and other property of Long Beach Federal Savings and Loan Association, and against the Long Beach Federal Savings and Loan Association itself.

2. The San Francisco Bank claims the right to be repaid the said principal sum of $6,300,000 payable on said four (4) notes as its own property, together with interest thereon as provided in said notes by the terms thereof, and that the said four (4) notes are the property of, and owned by the said San Francisco Bank exclusively, and that it, the said San Francisco Bank, has the right to hold all collateral thereunder until the payment in full of said notes, to it, the said San Francisco Bank.

3. The third-party plaintiff, crossclaimant and defendant Long Beach Federal Savings and Loan Association, claims as follows:

That the defendant A. V. Ammann had no authority in any capacity whatsoever to bind the said Long Beach Federal Savings and Loan Association, or any of its property, for such sum of $6,300,000, or for any other sum whatsoever, and that the only obligation, if any, of said Long Beach Federal Savings and Loan Association, to either the Federal Home Loan Bank of Portland, or to the said San Francisco Bank, or to the Los Angeles Bank, (or either or both, any or all) is such obligation, if any, which may result equitably from receipts of benefits, if any, by said Long Beach Association, of moneys paid to defendant Ammann and by defendant Ammann, paid into the assets of Long Beach Federal Savings and Loan Association, or to the shareholders or depositors thereof. That the amounts and nature of such equitable obligations can only be ascertained after an accounting now in progress between said defendant A. V. Ammann and Long Beach Federal Savings and Loan Association, and after rulings not yet made, and a possible accounting between said Portland Bank and the said Federal Home Loan Bank of San Francisco, and/or the said Los Angeles Bank.

That Long Beach Federal Savings and Loan Association further claims offsets in amounts presently unknown against such equitable obligation, if any. That the extent, amounts, and nature of such claimed offsets can not be presently ascertained by said Long Beach Federal Savings and Loan Association.

4. That if one or more of said Federal Home Loan Bank Administration Orders be held to be inoperative or invalid, there may be possible claims of the Federal Home Loan Bank of Portland, which might not be embodied in the claims of the San Francisco Bank and which might be asserted against the assets, notes, properties, and collateral concerned in this Order.

5. That claims may arise from the following circumstances:

That the Federal Home Loan Bank of Los Angeles, the Federal Home Loan Bank of Portland, sometimes known as Federal Home Loan Bank of San Francisco and the Long Beach Federal Savings and Loan Association, are or were, all multi-million dollar financial institutions, having numerous stockholders, depositors, creditors, and others interested in their assets and business.

That there are already on file in this case and now before this court two class actions, one on behalf of all the shareholders of the Long Beach Federal Savings and Loan Association, the other on behalf of all the stockholders of the Federal Home Loan Bank of Los Angeles, and that such class actions are brought as representatives of all of the class of said shareholders and stockholders of said institutions, respectively.

That the Long Beach Federal Savings and Loan Association has some 16,000 shareholders, individuals who have de-

posited their savings with said Association. That the Federal Home Loan Banks of Los Angeles and Portland had several hundred members or shareholders, each of whom is a financial institution, savings and loan or a building and loan association, within the district of such Federal Home Loan Bank or Banks, each of which savings and loan or building and loan association also has numerous depositors, investors, members and shareholders.

That all of these financial institutions are dealing with the savings of thousands of citizens of the states within the districts of said banks and which may depend upon the interpretation or validity of one or more of said Federal Home Loan Bank Administration Orders. Some or all of said stockholders, shareholders, investors, depositors or members may also have individual claims to the assets, properties, securities, etc. of said financial institutions.

That the sustaining or denying of claims of any one institution against any other one or more institutions would result in an increase or decrease in the interests, amounts and ownerships of the stockholders, depositors, investors, members or shareholders of such institutions.

That in the transactions between the said defendants A. V. Ammann, purportedly acting as conservator for said Long Beach Federal Savings and Loan Association, and the defendant Federal Home Loan Bank of Portland, sometimes also known as the Federal Home Loan Bank of San Francisco, the said defendant A. V. Ammann, by written assignments on separate documents describing said thousands of deeds of trust, and by assignments upon the backs of each of the original notes therein concerned attempted to assign and transfer or pledge said thousands of notes and deeds of trust securing the same in which Long Beach Federal Savings and Loan Association was named as beneficiary.

That each of said deeds of trust securing said notes conveyed the legal title of a separate piece of real property which was the home of a borrower of Long Beach Federal Savings and Loan Association to defendant Title Service Company, or to other corporations, as trustee to secure the payment of sums of money borrowed by said borrower from said Long Beach Federal Savings and Loan Association upon the terms and conditions set forth in said notes and deeds of trust thus purportedly assigned and transferred by defendant Ammann to defendant, said San Francisco Bank.

That pending final judgment and decision of the various issues of the *with* consolidated actions neither said Long Beach Federal Savings and Loan Association, alone, nor said Federal Home Loan Bank of Portland, sometimes known as Federal Home Loan Bank of San Francisco, alone, nor said Federal Home Loan Bank of Los Angeles, alone, nor any of the parties to this action can, without the aid and assistance of this court, make, execute and deliver to the said borrowers and homeowners an effective release, reconveyance and discharge of their real property.

That adjudication and determination of the rights, claims, obligations and liabilities of the various financial institutions, parties hereto, will require lengthy trials and the settlement and determination of the issues which are, or may be raised by the pleadings presently on file, or which may be filed, among which are: 1. The plaintiffs First Amended and Supplemental Complaint on behalf of the Shareholders Protective Committee, representing the 16,000 shareholders of Long Beach Federal Savings and Loan Association; 2. The Third-party Complaint and Cross-claim of Long Beach Federal Savings and Loan Association, seeking an accounting from the Federal Home Loan Bank of San Francisco, Portland and Los Angeles, and its complaint in consolidated action No. 5678 of this Court; 3. The answer and the cross-claim of said Los Angeles Bank and the Complaint in consolidated action No. 5678 of this Court; and 4. The pleadings yet to be filed by Federal Home Loan

Bank of Portland, sometimes known as the Federal Home Loan Bank of San Francisco, and such other parties as may be concerned therein. That each and all of said pleadings are very lengthy and complex, several exceeding 100 pages in length each.

That whatever ultimate right any of said present or future parties claimant may have to the proceeds of the said four (4) notes of $6,300,000 face amount, are preserved by the deposit in court as herein required. That whatever injury may result by said deposit to any of the contending parties is so slight as to be heavily outweighed by the equitable considerations of the injuries which flow and which will continue to flow to the borrowers and purchasers of properties conveyed by said deeds of trust, if said deposit were not so ordered. That among the injuries which would flow to said homeowners, and borrowers and purchasers by failing to require such deposit pending the final judgment in the within action, are (1) the inability of said thousands of borrowers and homeowners to secure a merchantable, or insurable title to the particular real property involved, which in turn would prevent either a sale thereof, or a loan or refinancing thereon, or a payment and termination of the interest and obligations of the present loans and deeds of trust thereon, and (2) a multiplicity of suits which might involve all of the issues raised, or which can be raised, in the instant litigation, and all of the parties to the present litigation; which injuries and damage are found to be grave, irreparable and continuing as to the thousands of borrowers and homeowners who have given their notes and deeds of trust to said Long Beach Federal Savings and Loan Association and conveyed the titles to their homes as security for said loans.

That in addition thereto are the hazards and dangers of injury to the 16,000 shareholders of the said Long Beach Federal Savings and Loan Association if said association should, in the face of these conflicting, inconsistent claims and demands, pay the said notes of the face amount of $6,300,000, claimed by the said San Francisco Bank to either the said San Francisco Bank or the said Los Angeles Bank to the exclusion of the other. That if such payment was made to one of said conflicting claimants to the exclusion of the other, and the final outcome of this litigation should decide that the one not paid was the one legally entitled to receive such payment, there would be hazard and danger to the Long Beach Federal Savings and Loan Association of the loss of the sum which it had paid and danger of double liability for payment of said sum.

That by custom and usage in the County of Los Angeles, State of California, policies of title insurance are required for marketable and merchantable title to real property to be sold, encumbered or conveyed in said County and State.

That if such payment by said Long Beach Federal Savings and Loan Association of said sum to be made to one of said conflicting claimants to the exclusion of the other, and the other claimant thereafter would be held to have been entitled to such payment, then the owners of the various properties under trust deeds may each be subjected to claims upon their notes and property for a portion of such total liability, which possible liability exists as a cloud upon the title to each of the thousands of properties involved and prevents each of them from securing a merchantable and insurable title, unless the within Order is made. That the making of the within Order thus avoids the complex, multiple and conflicting claims and demands which may be made upon the approximately 8,000 individual borrowers of said Association.

That all of the assets, and properties, herein described, notes, deeds of trust, United States Government Bonds, and other collateral are physically within the confines and boundaries of the Southern District of California and are thus physically within the jurisdiction of this Court. That all of said four notes (Exhibits "F," "G," "H," and "I," of the

said Noon Affidavit) are payable at the branch office of the said San Francisco Bank in the City of Los Angeles, County of Los Angeles, State of California. That all of the thousands of notes and deeds of trust hereinafter specifically described are payable at the offices of the Long Beach Federal Savings and Loan Association, in the City of Long Beach, Los Angeles County, California. That all of the thousands of parcels of real property, homes of the borrowers of Long Beach Federal Savings and Loan Association specifically described in said deeds of trust herein elsewhere described in detail are situated within the confines of the Counties of Los Angeles and Orange, State of California, all physically within the boundaries of the Southern District of the said United States District Court.

That all of the United States Bonds hereinafter specifically described are physically located at the Los Angeles Branch of the Federal Reserve Bank of San Francisco, in the City of Los Angeles, County of Los Angeles, State of California, within the confines of, and boundaries of, the United States District Court for the Southern District of California.

That each and all of the things, documents, notes, bonds, securities, properties, trust deeds and collateral herein required to be deposited are within the physical custody, control and/or possession of the said Frank C. Noon, as Los Angeles Branch Manager of the said San Francisco Bank, and are within the ability and power of said San Francisco Bank to deliver in compliance with this Order.

That there is already on deposit in the Registry of this Court and within the custody, jurisdiction and control of this Court, a sum in excess of $1,500,000 in cash, heretofore deposited as a result of numerous individual intervenors, seeking the aid of this Court, in the clearing of the encumbered and clouded titles to their homes.

That during the course of the hearing of the said Order to Show Cause and the said Motion on the 10th day of March, 1948, the counsel for Long Beach Federal Savings and Loan Association tendered to the Court a draft upon the Federal Reserve Bank of San Francisco, Los Angeles Branch, in the sum of $5,300,000 which, in addition to $1,024,098.35 of the sum already on deposit in the Registry of this Court, totals the sum of $6,324,098.-35, which was a tender in full of the total amount of the claims and demands of the said San Francisco Bank and the said Los Angeles Bank to said date. That said tender was made upon condition that all collateral, both bonds and trust deeds, herein elsewhere specifically described, be delivered by the said contending and conflicting banks free of their claims, to the said Long Beach Federal Savings and Loan Association, and that the sum of $6,324,098.35, thus tendered to be deposited in Court should take the place of the obligations, if any, of said Long Beach Federal Savings and Loan Association. The said tender was made without prejudice to the offsets or other claims of said Long Beach Federal Savings and Loan Association, to be later established or disallowed after the said accountings herein elsewhere described.

That the said bonds herein required to be deposited bear interest in excess of $10,000 per month and that the said tender of $6,324,098.35 had the same been accepted and paid into Court, would have borne no interest or income whatsoever. That it is inequitable and unfair that the conflicting claims of the various claimants should result in a loss to the eventual victor, of the said interest in excess of $10,000 per month and that inasmuch as none of said claimants, accepted said tender of cash, as thus made, this Court is requiring the deposit of all collateral in its present form which will result in earnings by the said $5,300,000 in United States Government Bonds of interest in excess of $10,000 per month.

That on January 23, 1948, this Court, made its Order, pursuant to and carrying into effect, a Resolution of the Home Loan Bank Board, dated January 17, 1948, restoring the said Long Beach Fed-

eral Savings and Loan Association, to its shareholders and their duly elected representatives, the officers and directors of the said association, and removing therefrom the defendant A. V. Ammann, as purported conservator for said association. That said Long Beach Federal Savings and Loan Association has approximately 16,000 shareholder member depositors, and approximately 8,000 borrowers. That in order for said association to exist and carry on its business, it must have capital and funds with which to operate and it must be able to accept the payments on loans from its thousands of borrowers and be able to give clear and merchantable titles to such borrowers when they pay their said loans in full. That because of the multiple, complex and conflicting demands of the parties as herein elsewhere found and set forth, unless this deposit in Court is required or other more cumbersome and expensive proceedings be taken, the said Long Beach Federal Savings and Loan Association, if it continued to accept such payments from its borrowers, it would be unable to issue to said borrowers a clear and merchantable title to their homes when such borrowers would pay off their loans and obligations in full. That the obligations claimed by the said San Francisco Bank and the Los Angeles Bank were not created by the said Long Beach Association directly, but were purportedly created in its name, by the defendant A. V. Ammann as purported conservator for said Long Beach Savings and Loan Association. That it would be harsh and inequitable for said Association to refuse to accept the payments of its borrowers upon the loans upon said borrowers' homes, or to require each of said borrowers to go through the lengthy, expensive and complex process of intervening and become intervening parties to this Federal Court action in order to secure a clear and merchantable title to their said homes.

That said association, by tendering and offering to pay into Court the total amount of the claimed obligations disputed as to ownership between the San Francisco Bank and the Los Angeles Bank, has done full and complete equity. That the permitting of said tender in cash, as thus made, would result in unnecessary damage in the loss of interest in excess of $10,000 per month to the litigants making such disputed claims.

That the collateral requirements of Federal Home Loan Banks, and particularly of the said San Francisco Bank, as security for loans made by them, are, when such collateral is par value United States Government Bonds, equal to the amount of the claimed indebtedness. That the maximum collateral requirements of said banks for the present loan of $6,300,000 face amount would be United States Government Bonds of a par value of face value of $6,300,000.

That a balancing or weighing of the grave and irreparable injury, suffered and which will continue to be suffered, by the Long Beach Federal Savings and Loan Association in the conduct of its business and by its 16,000 shareholder member depositors and by its 8,000 borrowers, if this deposit be not required, weighed against the slight inconvenience if any to the conflicting claimants, said San Francisco Bank and said Los Angeles Bank requires the deposit of all of the disputed notes, collateral, U. S. Bonds and other securities in the Registry of this Court. That the benefit resulting in marketable, merchantable, insurable titles to the thousands of home owners desiring to pay off their loans and to make payment on their loans to said Long Beach Federal Savings and Loan Association, can be expeditiously achieved only by the deposit herein required.

That prior to the time of the hearing of the Motions and Orders to Show Cause, A Subpoena Duces Tecum of this Court was issued and served upon the said San Francisco Bank. That its Los Angeles Branch Manager, Frank C. Noon, in response to said subpoena, produced all of the documents, notes, collateral, securities, and other things required in this Order to be deposited in the Registry of this Court. That said subpoena was not released nor discharg-

ed and that all of said things produced in response thereto were required to remain within the custody and control of this Court pending the making of this Order. That said subpoena is not discharged until in compliance with this Order, all of the things herein required to be deposited with the Registry of this Court are performed and deposited by the said San Francisco Bank, and/or its agents, employees, officers, servants and representatives.

That by resolution, adopted January 17, 1948, by the Home Loan Bank Board and by order made by this Honorable Court January 23, 1948, the property, assets and business of said Long Beach Federal Savings and Loan Association have been ordered and directed returned to said association and its shareholders, as expeditiously as possible. That in furtherance of said resolution and order, it is necessary that the deposit in Court herein required, be made in order to enable said Association to recover millions of dollars of its notes, deeds of trust, bonds and securities, clearly not subject to any of the conflicting claims of the Federal Home Loan Banks of Los Angeles, San Francisco or Portland, and now held by said San Francisco Bank in excess of any collateral requirements.

That no cause has been shown why any of the following orders should not be made or performed,

Now, Therefore, it is hereby ordered. adjudged and decreed that the following parties forthwith do the following things:

That third-party plaintiff, cross-claimant and defendant Long Beach Federal Savings and Loan Association is hereby ordered to deposit with the Registry and Clerk of this Court each, any and all, receipts, acknowledgements, or evidences in its possession wherein the said San Francisco Bank and/or the said Los Angeles Bank, or either or both of said banks, are shown to have, since May 20, 1946, received delivery of, any property, bonds, securities, notes, deeds of trust, policies of title insurance, subordination agreements, modification agreements, or any or all other property of said Long Beach Federal Savings and Loan Association.

The Federal Home Loan Bank of Portland, sometimes known and designated as Federal Home Loan Bank of San Francisco, and/or the Federal Home Loan Bank of San Francisco, and any and all of its agents, employees, servants, deputies, officers, managers or branch managers, are hereby ordered and required to deposit with the Clerk and in the Registry of this Court the following:

1. The original straight note, dated June 28, 1947, for $2,300,000 in favor of Federal Home Loan Bank of San Francisco as payee, purportedly signed by Long Beach Federal Savings and Loan Association by A. V. Ammann, conservator, a copy of which said note is Exhibit "F" in the said Affidavit of Frank C. Noon, filed in response to the Order to Show Cause.

2. The original straight note, dated November 20, 1947, for $500,000 in favor of Federal Home Loan Bank of San Francisco as payee, purportedly signed by Long Beach Federal Savings and Loan Association by A. V. Ammann, conservator, copy of which said note is Exhibit "G" in the Affidavit of Frank C. Noon, filed in response to the Order to Show Cause.

3. The original straight note, dated November 22, 1947, for $2,000,000 in favor of Federal Home Loan Bank of San Francisco as payee, purportedly signed by Long Beach Federal Savings and Loan Association by A. V. Ammann, conservator, copy of which said note is Exhibit "H" in the Affidavit of Frank C. Noon, filed in response to the Order to Show Cause.

4. The original straight note, dated November 24, 1947, for $1,500,000 in favor of Federal Home Loan Bank of San Francisco as payee, purportedly signed by Long Beach Federal Savings and Loan Association by A. V. Ammann, conservator, copy of which said note is Exhibit "I" in the Affidavit of Frank C. Noon, filed in response to the Order to Show Cause.

5. Total par value of $5,300,000 of United States Government bonds, described in detail by maturity date, serial number, interest rate, and interest coupon attached in the itemized list as follows: (Description omitted)

6. Each and all of the original notes and original deeds of trust described as follows: (Description omitted)

It is further ordered that said Federal Home Loan Banks are hereby ordered and required to deposit with the Clerk of this Court each, every, and all, notes, deeds of trust, bonds, securities, subordination agreements, modification agreements, policies of title insurance, or any and all other securities, valuables or documents, held by them in connection with, or through or under any collateral pledge or other agreement either of the Long Beach Federal Savings and Loan Association, or defendant A. V. Ammann, or either or both of them, whether herein specifically described or not.

One of the subjects brought before this Court by said Motion and said Order to Show Cause was the ownership of approximately 6000 shares of stock in the said San Francisco Bank, which certificates of stock were issued in the name of Long Beach Federal Savings and Loan Association, and were procured upon the directions of defendant A. V. Ammann, as purported conservator. The requirements of ownership of such stock, or stock in some Federal Home Loan Banks, vary in proportion to the amounts of indebtedness claimed or existing from said Federal Savings and Loan Association to such Federal Home Loan Bank or Banks. As this Order is interim in nature, and does not presently determine the situation concerning such indebtedness, if any, and does not require, the deposit in the Registry of this Court of said stock, full power is likewise reserved for a later disposition of the questions concerning the ownership, repurchase, cancellation or cashing of said Federal Home Loan Banks stock by Long Beach Federal Savings and Loan Association.

Any and all requests for reconveyance, reconveyances or other actions taken by said Long Beach Federal Savings and Loan Association, and/or said Title Service Company concerning any notes or trust deeds herein involved, are hereby expressly adjudged and declared to be without prejudice or bias and to in no way limit, affect, or alter the claims, rights, obligations, or demands of either said Long Beach Federal Savings and Loan Association or said Title Service Company against any of the other parties to this action excepting only, each and all of such requests for reconveyance, reconveyances and other documents, shall be completely operative and effective to lift and remove such claims, obligations and demands from the real property described or referred to therein, and to preserve and reserve such claims, obligations, rights and demands against the assets, money, property, collateral, bonds, securities, remaining on deposit in the Registry of this Court. The application of this clause is not limited to reconveyances, requests or other proceedings concerning notes and deeds of trust herein described, but extends also to all other notes, deeds of trust or other matters, received by said Long Beach Federal Savings and Loan Association and/or the said defendant Title Service Company, upon delivery to it or them of the assets of Long Beach Federal Savings and Loan Association by the defendants A. V. Ammann, et al., pursuant to the Order of this Court of January 23rd, 1948, restoring said Association, its assets, business and affairs to the possession, custody and control of the officers and directors of said Long Beach Federal Savings and Loan Association.

It is one of the primary purposes of this Order to facilitate the immediate clearing of the clouded and encumbered titles to the homes of thousands of borrowers who have conveyed said titles as security for the payment of the loans evidenced by the notes and deeds of trust herein described. United States Government Bonds and/or cash in excess of the 100% of the collateral requirements necessary to secure the total claims of either or any of said Federal Home Loan

Banks, will upon compliance with this order, be in the Registry of this Court subject to the claims of all parties interested therein. Therefore third party plaintiff, cross-claimant and defendant Long Beach Federal Savings and Loan Association may at various times and from time to time make ex parte applications to this Court for withdrawal of all or any of the notes and deeds of trust herein ordered required to be deposited. Such application shall describe the notes and trust deeds, withdrawal of which is sought, together with the unpaid balance due upon said notes and trust deeds. Notice of presentation of such withdrawal or withdrawal application need not be served upon any person or party to this proceeding unless otherwise provided by the Court.

Said Long Beach Federal Savings and Loan Association is hereby authorized and empowered, while said deeds of trust, and the note thereon remain on deposit in the Registry of this Court, to accept payments on account or in full upon any and all notes and deeds of trust herein described and to retain such payments so collected as if said notes and deeds of trust had not been so deposited or pledged as collateral to said banks.

Neither this paragraph nor any part of this Order is intended to, nor does it, adjudicate or determine or decide any of the claims, defenses, demands, set offs, accounts, counterclaims or other items or charges between any of the parties hereto, except that this Order does and shall limit the claims of the Federal Home Loan Bank of San Francisco and/or the Federal Home Loan Bank of Los Angeles (or either or both, or the total combined amount of such claims) to the amount set forth in their returns to the said Order to Show Cause and in the evidence produced by them at the hearing of said Order to Show Cause and of said motion, to wit: the principal sum of $6,300,000, together with interest thereon at the rate of 2% per annum until paid, which interest amounted to $24,098.35 on March 10, 1948.

The defendant and cross-claimant, Title Service Company, and any and all other trustees, past, present or future upon each and all of the notes and deeds of trust, herein described, or already received by Long Beach Federal Savings and Loan Association from any person or source, whom or whatsoever, pursuant to the order of this Court, of January 23, 1948, restoring the said Long Beach Federal Savings and Loan Association and its assets and business to control and possession of its duly elected officers and directors, are hereby authorized to reconvey each and any and all of the titles received or held by said trustee or trustees under said Notes, said deeds of trust, or any and all of the same, upon the sole request for reconveyance of said Long Beach Federal Savings and Loan Association executed and delivered by authority of its officers and directors. No other or additional requests for reconveyance of any or all of said notes or deeds of trust shall be required from any persons, corporation, individual or party whatsoever, and particularly shall not be required from (a) The Federal Home Loan Bank of Portland, sometimes known as the Federal Home Loan Bank of San Francisco, (b) The Federal Home Loan Bank of San Francisco, (c) The Federal Home Loan Bank of Los Angeles, or (d) any other party to this action and proceeding.

All rights of all parties against each other and in and to all property or documents herein described or affected are expressly reserved and presented for subsequent presentation and determination except as herein elsewhere expressly otherwise precided, and this Order is made fully and completely without prejudice, determination, recognition or acknowledgement on the part of any party to this action or any of the claims, defenses, rights, obligations, duties, set offs, counterclaims, or of the validity of any act, transaction, instrument, document or thing whatsoever.

Because of the great number, volume and amount of securities, notes, deeds of

trust and other documents, herein required to be deposited, and the matters necessary in connection therewith to free and clear the titles to the homes of the thousands of borrowers who have conveyed their property as security for the loans evidenced by said notes and deed of trust, it is improbable that this order can foresee and itemize all of the complex circumstances and requirements, arising or likely to arise in connection with a deposit and transfer of this magnitude. The Court therefore reserves full power, both under this Order and the Order to Show Cause and the Motion which brought this proceeding to this hearing and also under its otherwise existing jurisdiction to make all necessary, expedient or proper additional, or later orders, decrees or judgments.

The Federal Reserve Bank of San Francisco, Los Angeles Branch, is hereby designated as depositary for the Government Bonds, the subject of this Order.

Dated at Los Angeles, California, this 13th day of March, 1948.

> Peirson M. Hall,
> Judge.

Approved as to form:

> Westover & Smith,
> By Wyckoff Westover,
> Attorneys for Plaintiffs.
> Charles K. Chapman,
> Attorney for Long Beach Federal Savings & Loan Assn.
> O'Melveny & Myers,
> By John Whyte,
> Attorneys for Defendant and Third Party Defendant and Cross-Claimant Federal Home Loan Bank of Los Angeles.

Approved as to form only:

> Verne Dusenbery, and
> Bishop & Hoffman,
> By Irving G. Bishop,
> Attorneys for Federal Home Loan Bank of San Francisco, Third Party Defendant and Cross-Defendant.

[Endorsed]: Filed March 13, 1948

### Appendix B

Order for Delivery of Notes and Trust Deeds (Excess Collateral from Clerk of Court to Long Beach Federal Savings and Loan Association).

The verified motion of Long Beach Federal Savings and Loan Association for an Order for Delivery of Notes and Trust Deeds (Excess Collateral) from Clerk of Court to Long Beach Federal Savings and Loan Association came on regularly to be heard pursuant to waiver of notice of hearing thereof, due and legal notice of hearing of said Motion having been given by waiver of notice hearing of, and joinder in, said Motion, plaintiffs, Paul Mallonee, C. H. Newhouse and Winnie Bucklin, the Shareholder Members Protective Committee, appearing by their counsel of record, Westover and Smith by Wyckoff Westover, Long Beach Federal Savings and Loan Association, defendant and third-party plaintiff, appearing by its counsel of record, Charles K. Chapman; James M. Carter, U. S. Attorney, by Arline Martin, Asst. U. S. Atty., having waived notice of hearing, appeared for those defendants on whose behalf they have heretofore appeared; Title Service Company, defendant and cross-claimant in interpleader,

appearing by its counsel of record, Lyman B. Sutter; Federal Home Loan Bank of Portland, also sometimes known as Federal Home Loan Bank of San Francisco, appearing by its counsel of record, Verne Dusenbery, Irving G. Bishop and Sylvester Hoffman by Irving G. Bishop, Federal Home Loan Bank of Los Angeles appearing by its counsel of record, O'Melveny and Myers and Richard FitzPatrick, by John Whyte, and evidence having been submitted and the matter having been argued by all parties, the Court now finds as follows:

That on March 13, 1948, this Court made its Order after hearing and argument, on consideration of evidence both oral and documentary, in which said Order power to make this, or any other, orders was expressly reserved.

That said Order of March 13, 1948, described therein 74 pages of notes and trust deeds by express description which description is hereinafter contained.

That each of said deeds of trust securing said notes conveyed the legal title of a separate piece of real property which was the home of a borrower of Long Beach Federal Savings and Loan Association to defendant Title Service Company, or to other corporations, as trustee to secure the payment of sums of money borrowed by said borrower from said Long Beach Federal Savings and Loan Association upon the terms and conditions set forth in said notes and deeds of trust thus purportedly assigned and transferred by defendant Ammann to defendant, said San Francisco Bank.

That adjudication and determination of the rights, claims, obligations and liabilities of the various financial institutions, parties hereto, will require lengthy trials and the settlement and determination of the issues which are, or may be raised by the pleadings presently on file, or which may be filed, among which are: (1) the plaintiff's First Amended and Supplemental Complaint on behalf of the Shareholders Protective Committee, representing the 16,000 shareholders of Long Beach Federal Savings and Loan Association; (2) the third-party Complaint and Cross-claim of Long Beach Federal Savings and Loan Association, seeking an accounting from the Federal Home Loan Bank of San Francisco, Portland and Los Angeles and its complaint in consolidated action No. 5678 of this Court; (3) the Answer and the Cross-claim of said Los Angeles Bank and the Complaint in consolidated action No. 5678 of this Court; and (4) the pleadings yet to be filed by Federal Home Loan Bank of Portland, sometimes known as the Federal Home Loan Bank of San Francisco, and such other parties as may be concerned therein. That each and all of said pleadings are very lengthy and complex, several exceeding 100 pages in length each.

That among the injuries which would flow to said homeowners and borrowers unless this Order be made requiring the Clerk of this Court to deliver said notes and deeds of trust to the owners thereof, the Long Beach Federal Savings and Loan Association, are (1) the inability of said thousands of borrowers and homeowners to secure a merchantable or insurable title to the particular real property involved, which in turn would prevent either a sale thereof, or a loan or refinancing thereon, or a payment and termination of the interest and obligations of the present loans and deeds of trust thereon, and (2) a multiplicity of suits which might involve all of the issues raised, or which can be raised in the instant litigation, and all of the parties to the present litigation; which injuries and damage are found to be grave, irreparable and continuing as to the thousands of borrowers and homeowners who have given their notes and deeds of trust to said Long Beach Federal Savings and Loan Association and conveyed the titles to their homes as security for said loans.

That by custom and usage in the County of Los Angeles, State of California, policies of title insurance are required for marketable and merchantable title to real property to be sold, encumbered or conveyed in said County and State.

That said Long Beach Federal Savings and Loan Association has approximately 16,000 shareholder members depositors, and approximately 8,000 borrowers. That in order for said association to exist and carry on its business, it must have capital and funds with which to operate and it must be able to accept the payments on loans from its thousands of borrowers and be able to give clear and merchantable titles to such borrowers when they pay their said loans in full. That because of the multiple, complex and conflicting demands of the parties as herein elsewhere found and set forth, unless this delivery of said notes and trust deeds by the Clerk of this Court to Long Beach Federal Savings and Loan Association is required or other more cumbersome and expensive proceedings be taken, the said Long Beach Federal Savings and Loan Association, if it continued to accept such payments from its borrowers, it would be unable to issue to said borrowers a clear and merchantable title to their homes when such borrowers would pay off their loans and obligations in full. That the obligations claimed by the said San Francisco Bank and the Los Angeles Bank were not created by the said Long Beach Association directly, but were purportedly created in its name, by the defendant A. V. Ammann as purported conservator for said Long Beach Federal Savings and Loan Association. That it would be harsh and inequitable for said Association to refuse to accept the payments of its borrowers upon the loans upon said borrowers' home, or to require each of said borrowers to go through the lengthy, expensive and complex process of intervening and become intervening parties to this Federal Court action in order to secure a clear and merchantable title to their said homes.

That the collateral requirements of Federal Home Loan Banks, and particularly of the said San Francisco Bank, as security for loans made by them, are, when such collateral is par value United States Government Bonds, equal to the amount of the claimed indebtedness.

That the maximum collateral requirements of said banks for the present loan of $6,300,000 face amount would be United States Government Bonds, or cash, or bonds and cash combined, of a par value or face value of $6,300,000.

That a balancing or weighing of the grave and irreparable injury, suffered and which will continue to be suffered, by the Long Beach Federal Savings and Loan Association in the conduct of its business and by its 16,000 shareholder member depositors and by its 8,000 borrowers, if this delivery of said trust deeds from the clerk to said Long Beach Federal Savings and Loan Association be not required, weighed against the slight inconvenience if any to the conflicting claimants, said San Francisco Bank and said Los Angeles Bank, requires the delivery of said trust deeds from the clerk of the court to Long Beach Federal Savings and Loan Association.

That the benefit resulting in marketable, merchantable, insurable titles to the thousands of homeowners desiring to pay off their loans and to make payment on their loans to said Long Beach Federal Savings and Loan Association, can be expeditiously achieved only by the things herein required to be done.

That there are now on deposit in the Registry of the Court, $5,300,000 par value of such United States bonds and in addition thereto a sum in excess of $1,500,000 cash which bonds and cash combined far exceed such collateral requirements for said notes and the face amount of $6,300,000.

That the coupons upon said bonds and the interest accruing thereon are as follows: Upon $2,680,000 of 2½% bonds, interest accrues at 2½% per annum or $5,583.32 per month. Upon $2,620,000 of 2¼% bond, interest accrues at 2¼% per annum or $4,912.50 per month. That the combined accrual of interest on said $5,300,000 in bonds is the total of $10,495.82 monthly or $125,950 per year. That the combined interest accrual upon the four disputed notes of $6,300,000 aggregate face, is at the rate of 2% per an-

num, or the sum of $10,500 per month, or $126,000 per year. That the interest accruing on said $5,300,000 in government bonds approximately equals the interest accruing at 2% per annum on said four disputed notes of $6,300,000 aggregate face.

That there is therefore in the custody of the Clerk and in the Registry of this Honorable Court, interest bearing United States Government Bonds and cash exceeding by more than five hundred thousand dollars the balance due or which can become due upon said four disputed notes of $6,300,000 face and that said government bonds earn interest approximately equal to or in excess of, any interest which could accrue on said four disputed notes of $6,300,000 face. That the Long Beach Federal Savings and Loan Association, the payee of said notes and as beneficiary under said deeds of trust and on whose account said deeds of trust and accompanying notes were purportedly pledged with the said Federal Home Loan Bank of San Francisco, is entitled to the release of each and all said deeds of trust and accompanying notes (together with identical papers accompanying) as excess collateral over and above the amount of the four (4) notes aggregating $6,300,000 face, purportedly executed in the name of said Association by A. V. Ammann, purportedly acting as conservator for said Association.

That no cause has been shown why any of the following orders should not be made or performed.

Now Therefore, it is hereby ordered, adjudged and decreed as follows:

That the clerk of this Court is hereby ordered, authorized and directed to deliver to Long Beach Federal Savings and Loan Association upon said Association's demand, each, all and every of the notes, deeds of trust, hereinafter listed, and any and all other papers, documents, policies of title insurance, or any other instrument in any way connected with them.

The receipt acknowledging delivery of all or any part of the things herein required shall be executed on behalf of said Long Beach Federal Savings and Loan Association by T. A. Gregory, President and Ethel L. Roberts, Assistant Secretary.

The lien and obligation and charge of the claims of the Federal Home Loan Bank of Portland, sometimes known as Federal Home Loan Bank of San Francisco, and/or Federal Home Loan Bank of San Francisco, and/or Federal Home Loan Bank of Los Angeles (or either or both, or the total combined amount of said claims) and either or both of the same are hereby lifted and removed from the said notes and deeds of trust and each and all of them and are transferred to, and restricted to, and shall be claims to, and obligations upon, the said sum of $5,300,000 in bonds herein ordered deposited in Court and such additional sum in money from the sum in excess of $1,500,000, already in the Registry of this Court, sufficient to make the combined total sum of $6,324,098.35 with interest on $6,300,000 at 2% per annum from March 10, 1948, until paid.

The notes and deeds of trust herein and previously described in the same Order of March 13, 1948 and now on deposit in the Registry of this Court as required in said Order, and herein ordered delivered, are as follows:

It is further ordered that any and all endorsements appearing on each or any of the notes and trust deeds hereinafter described in favor of said Federal Home Loan Bank of San Francisco and any and/or all instruments assigning or transferring or purporting to assign or transfer said notes and/or trust deeds are hereby cancelled, and the title thereto and to each and every of such trust deeds and notes, if any title passed from said Long Beach Federal Savings and Loan Association, is hereby revested in said Long Beach Federal Savings and Loan Association.

Deeds of Trust and Accompanying Notes Belonging to Long Beach Federal Savings and Loan Association in Possession of Los Angeles Branch Federal Home Loan Bank of San Francisco.

March 4, 1948

(Description omitted)

That because of the great number, volume and amount of securities, notes, deeds of trust and other documents herein required to be delivered and the matters necessary in connection therewith to free and clear the titles to the homes of the thousands of borrowers who have conveyed their property as security for the loans evidenced by said notes and deeds of trust, it is improbable that this order can foresee and itemize all of the complex circumstances and requirements, arising or likely to arise in connection with a delivery and transfer of this magnitude. The court therefore reserves full power, both under this Order and under the Order dated March 13th, 1948, and the Order to Show Cause and the Motions which brought that proceeding to hearing and also under its otherwise existing jurisdiction to make all necessary, expedient or proper additional or later orders, decrees or judgments.

Dated at Los Angeles, California, this 26th day of March, 1948.

Peirson M. Hall,
Judge.

Approved as to form: James M. Carter,
U. S. Attorney,
By Arline Martin,
Assistant U. S. Attorney.
Westover and Smith,
By Wyckoff Westover,
Attorneys for Plaintiffs.
Richard Fitzpatrick,
O'Melveny & Myers,
By John Whyte,
Attorneys for Defendant and Third Party Defendant and Cross-Claimant Federal Home Loan Bank of Los Angeles.
Charles K. Chapman,
Attorney for Long Beach Federal Savings & Loan Assn.

Approved as to form:

Verne Dusenbery,
Of Counsel.
Bishop & Hoffman,
By Irving G. Bishop,
Attorneys for Federal Home Loan Bank of San Francisco
Lyman B. Sutter,
Attorney for Title Service Co.

Appendix C
Order on Motion to Remand

Plaintiff's motion to remand must be decided from the face of the complaint, unaided by the Answer or the Petition for Removal or any other pleadings or documents filed subsequently in the case, Stauffer v. Exley, 9 Cir., 1950, 184 F.2d 962.

Assuming, but without deciding, that diversity does not exist between the plaintiff and defendant, the first sentence of Section 1441(b) of Title 28, U.S.Code, is controlling: it provides,

"Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties."

Under the foregoing provision, lack of diversity makes no difference if, (1) the court would have "original jurisdiction," and, if, (2) the action be "founded on a claim or right arising under the Constitution, treaties or laws of the United States", (i. e., a federal question).

Under Section 1345 of Title 28, the District Courts have original jurisdiction of all civil actions commenced by "any agency" of the United States which is "expressly authorized to sue by Act of Congress." Whatever else was decided in the opinion by the U. S. Court of Appeals for this Circuit, in the appeal taken in case No. 5678, (which I do not here attempt to interpret), it did hold that the plaintiff herein was "an agency" of the United States.

It was created by statute of the United States and acts by virtue of them: Chapter 11, Title 12, § 1421 et seq., U.S. Code Annotated. That statute is copious in its regulation of the powers and activities of the plaintiff as are also the Federal regulations issued under it.

Section 1432 of Title 12 U.S.C.A., among other things, authorizes the plaintiff herein "to sue and be sued, to complain and to defend, in any court of competent jurisdiction, State or Federal". Hence it comes within the requirements for original jurisdiction of Section 1345 of Title 28, U.S.Code, as an "agency of the United States" which is "expressly authorized to sue by Act of Congress."

That being so it meets the requirement of Section 1441(b) of Title 28, *if* the action is "founded on a claim or right arising under the Constitution, treaties or laws of the United States", (i. e., if there is a federal question present) on the face of the plaintiff's complaint. Or, stated differently, this court is a "court of competent jurisdiction" if there is a federal question, regardless of diversity or lack of it.

It is urged, more strenuously than logically, by the plaintiff herein that the complaint as filed does not present federal questions.

I turn now to the plaintiff's complaint. There are five separately stated causes of action. The first four causes of action are each based on separate promissory notes of different dates, alleged to have been made, executed and delivered to the plaintiff by the defendant for a valuable consideration. The fifth cause of action is either a common count for money had and received or one for declaratory relief, or both, or for a foreclosure of pledges (it alleges hypothecation of securities and prays foreclosure thereon). For the purposes of this motion it is immaterial what the fifth cause of action may be called. Paragraphs I and II of the first cause of action are common to all five of the separately stated causes of action.

Paragraph I alleges that the plaintiff is organized and exists and acts under and by virtue of the laws of the United States. Paragraph II contains a similar allegation as to the defendant. While such allegations may not be sufficient in themselves to raise a federal question to support a removal—a question I do not now pass on—the plaintiff, in order to establish a prima facie case, even on default, would have to prove them, and their determination presents a question of federal law only.

The notes are signed in typewriting "Long Beach Federal Savings and Loan Association," with the words, "A. V. Ammann" in ink, and the typed word "Conservator" following the words, "A. V. Ammann." The last paragraph of each note provides, "In witness whereof the maker, by authority of its Board of Directors or governing body, has caused this note to be executed by its duly authorized officers and caused its corporate seal to be hereunto affixed." No seal appears attached to any note, and no signature appears to be attached by anyone claiming to be a "duly authorized officer" of the Long Beach Federal Savings & Loan Association, nor is there any resolution of the Board of Directors or governing body of that Association attached to the complaint. It

would, therefore, be necessary for the plaintiff to prove as part of its prima facie case, who "A. V. Ammann" is; what is a "Conservator," and the authority of a "Conservator" to execute said notes. No amount of legerdemain or argument can prevent the determination of those things from being federal questions. The appointment of a Conservator and his powers to act, as well as the powers of plaintiff are all regulated by federal law. Furthermore, the defendant, Long Beach Federal Savings and Loan Association is created, exists, and acts under federal statutes and regulations.

The fifth cause of action is either a common count for money had and received, or one for declaratory relief, or both. It alleges hypothecation of securities and prays for foreclosure thereon. But whether it is a cause of action on a common count for money had and received, or is based on the theory of declaratory relief, or is a suit for foreclosure of a pledge, it is completely immersed in federal questions. Here again the plaintiff, in order to establish a prima facie case would have to prove the validity of the execution of the notes by defendant; the validity of the advancing of the money by the plaintiff, and the validity of the pledging of the securities. This is all the more so for the reason that in Paragraph XV it is alleged that the defendant is estopped from denying that it is indebted to the plaintiff, and is estopped from denying the validity of the notes, and is estopped from denying that the plaintiff is the holder of a lien, either legal or equitable. Certainly all of these are federal questions.

It is, therefore, hereby ordered that the motion of Plaintiff to remand be, and is hereby denied.

Dated, Los Angeles, California, May 27, 1953.

Peirson M. Hall, Judge.

Appendix D

"Federal Home Loan Bank of San Francisco

"Straight Note

"$———

Los Angeles, California ———
——— 194—

"On ——— 194—, for value received, the undersigned promises to pay to the order of the Federal Home Loan Bank of San Francisco payee, at its branch office in the City of Los Angeles, California ——— Dollars ($———), with interest from date hereof until this note is paid in full, at the rate of 2 per centum per annum, payable ——— 194—, and quarter-annually thereafter. The maker shall have the right to prepay this note in whole or in part at any time; provided, however, that the payee shall have the right, at its option, to collect not to exceed 60 days' unearned interest on the amount prepaid.

"The maker hereby assigns and pledges to the payee, as collateral security for the payment of this note and of any and all other obligations of the maker to the payee, due or to become due, heretofore or hereafter contracted or existing, all stock of the Federal Home Loan Bank of San Francisco owned by it, any and all deposits made by it with said payee, and any and all other collateral security heretofore or hereafter assigned or pledged to the payee. Upon demand the maker agrees forthwith to deposit with the payee such additional or substitutional collateral security as the payee may, at any time or from time to time, deem necessary adequately to secure it against any and all obligations of the maker to the payee. Subject to the approval of payee, the maker may withdraw any item of collateral security and substitute in lieu thereof other similar collateral security of equal value.

"Upon default in any payment of principal or interest, or upon failure to perform any other covenant herein or in any other instrument executed by the maker in favor of the payee, or upon failure to furnish additional or substitutional collateral security, or if a conservator, cus-

todian, receiver or liquidator is appointed for the maker or any of its property, or if it is adjudicated to be insolvent or makes an assignment for benefit of creditors, or if the operations of the maker or its corporate powers are restricted in any manner by a court or by State or other supervisory authority, or in case of any form of liquidation, merger or consolidation, the payee may at its option declare the entire amount of principal and interest hereof, and of any other obligation of the maker to the payee, to be due and payable.

"In case of nonpayment, when due, of principal or interest hereof, or of any other obligation of the maker to the payee, either at maturity or by such declaration, the payee may, at its option and without notice, apply any balances, credits, deposits, accounts or moneys of the maker then in its possession in full or partial payment of this note, and/or of any other obligation of the maker to the payee; and may sell, assign, and deliver the whole or any part of the collateral security, without any relief to the maker from any valuation or appraisement laws now in effect or hereafter enacted, at any public or private sale, without demand, advertisement or notice of the time or place of sale or of adjournments thereof, all of which are hereby expressly waived. The maker further waives any and all equity or right of redemption, whether before or after sale hereunder, and agrees that upon such sale the payee may become the purchaser of the whole or any part of said collateral security free from any such right or equity of redemption. In case of such sale, after deducting all costs, attorneys' fees, and other expenses of collection, the payee may apply the residue of the proceeds to the payment hereof and/or to such other obligation of the maker to the payee as it shall deem proper, returning the overplus, if any, to the maker.

"Without limiting the right of the payee to sell part or all of the collateral security as herein authorized, such payee, in case of any default may, at its option, collect or cause to be collected or otherwise converted into money any part of said collateral security, by suit, or otherwise, and in such case, may surrender, compromise, release, renew, extend, or exchange any item of collateral security without prior notice to or consent to the maker. And in case of such collection or conversion into money of any of such collateral security, the payee, after first deducting the costs, attorneys' fees, and other expenses of collection, shall apply the residue of such proceeds to the payment of this note or of any other obligation of the maker, whether due or not, in such manner as it shall choose. The payee need not resort to the collateral security before exercising any of its other rights hereunder.

"In the event this note is collected by an attorney, either with or without suit, the maker agrees to pay a reasonable attorney's fee and expenses of collection. The maker and indorsers severally waive presentment for payment, protest, notice of protest, and notice of nonpayment of this note. It is further agreed that any delay on the part of the payee in exercising any rights hereunder shall not operate as a waiver of said rights; that acceptance of any payment after its due date shall not be deemed a waiver of the right to require prompt payment when due of all other sums, and that the acceptance of any payment after the payee has declared the entire indebtedness due and payable shall not cure any default of the maker or operate as a waiver of any rights of the payee hereunder.

"The rights, powers, and privileges conferred upon the Federal Home Loan Bank Board and/or member banks by the 'Federal Home Loan Bank Act,' approved July 22, 1932, as in force at the date of the execution hereof and/or as hereafter amended, are hereby made a part of the provisions of this note. It is agreed that any payment of principal and/or interest made by the maker to the payee may be applied on account of such obligation of the maker to the payee as the payee may elect.

"This note applies to, inures to the benefit of, and binds the successors and assigns of the parties hereto, and whenever the context so requires the mascu-

line gender includes the feminine or neuter and the singular number includes the plural. This note shall be construed according to the laws of the state in which the principal office of the payee is situated.

"In Witness Whereof, the maker, by the authority of its board of directors or governing body, has caused this note to be executed by its duly authorized officers and has caused its corporate seal to be hereunto affixed.

"Long Beach Federal Savings
and Loan Association

(Full corporate name of applicant)
(Seal)

By A. V. Ammann, Conservator

(Signature) (Title)

Attest:

(Signature) (Title)"

Appendix B
Judgment

Docketed and Entered Filed
Dec 15 1953 Dec. 11 1953
Edmund L. Smith, Clerk Edmund L. Smith, Clerk
By Edw. F. Drew By Edw. F. Drew
Deputy Clerk Deputy Clerk

United States District Court
Southern District of California
Central Division

Mallonee, et al.,
 Plaintiffs
 v. No. 5421–PH Civil
Fahey, et al.,
 Defendants.

Order Directing the Return of
Collateral in Accordance
with Mandate

Whereas, on December 2, 1949 the above entitled court entered an order of preliminary injunction in the within matter, and

Whereas, the following defendants: Home Loan Bank Board, William K. Divers, J. Alston Adams, O. K. LaRoque, Federal Savings and Loan Insurance Corporation, John H. Fahey, A. V. Ammann, George K. Bramley and Federal Home Loan Bank of San Francisco appealed therefrom, which appeal was numbered 12511 in the U. S. Court of Appeals for the Ninth Circuit, and was not consolidated with any other appeal, and

Whereas, said U. S. Court of Appeals, on April 2, 1952, filed its opinion and made its judgment reversing said order of preliminary injunction, and its mandate on said appeal, together with the mandate on appeal No. 12591 was received by this court as one document on May 25, 1953, a true and correct copy of which mandate is attached hereto and made a part hereof.

Whereas, the petitions for rehearing on denial of certiorari were denied by the Supreme Court of the United States on June 9, 1953, and the judgment on said appeals thereafter became final and said mandate was ordered spread on the records of this court on June 24, 1953.

Whereas, on October 12, 1953, there came on for hearing various motions in connection with said mandate which were heard through October 24th, and whereas this court filed a memorandum of opinion on November 30, 1953, which is incorporated herein by reference,

Now, therefore, the Court finds the cash and property heretofore deposited in court, with the balance presently remaining in court, exclusive of the $50,000 cashier's check deposited by cross-claimant in interpleader Wallis, and exclusive of the face amount of individual trust deed notes deposited by the San Francisco Bank, and exclusive of the conservator's notes of $6,300,000, as of August 3, 1953 is as follows:

I. From individual-borrower interpleader-interventions involving trust deeds:

1. Principal and interest............ $1,631,406.70
2. Penalties and impounds........... 557.26
3. Reconveyance fees to trustees on individual-borrowers' notes..... 747.50
4. "Federal Housing Administration Bonus" ..................... 8,329.00

Total cash from individual-borrowers.............. $1,641,040.46

II. Cash from interpleader-interventions other than trust-deed transactions:

1. George Turner ................. $ 18,503.52
2. Bellflower ...................... 38,300.00
3. Long Beach Federal Insurance premiums .................... 123,026.33

sub-total ........................ 179,829.85

III. Total cash interpleaded............................ $1,820,870.31
 Paid out under order of court as fees, etc........... 344,945.04

IV. Balance cash presently in court from interpleaders... $1,475,925.27

V. Cash represented by accumulated interest coupons to Aug. 3, 1953 on $5,300,000 government bonds...... 709,633.33

VI. Total cash in Court August 3, 1953................. $2,185,558.60

VII. U. S. Government coupon bonds................... 5,300,000.00

VIII. 6085 shares of stock in San Francisco Bank issued to Long Beach Association at $100 par value per share 608,400.00

IX. Total cash, bonds and stock in court................ $8,093,958.60

The court further finds, in compliance with said mandate, as follows:

Specific figure set forth in mandate...................... $6,324,098.35
Interest at 2% from March 10, 1948 to and including Aug. 3, 1953 ............................................. 680,399.99

Aggregate total to be returned under Paragraph 3 of the mandate ........................................... $7,004,498.34
which figure is made up as follows:
U. S. Government bonds ................... $5,300,000.00
Cash represented by accumulated interest coupons thereon to August 3, 1953........... 709,633.33
Cash from the registry of the court.......... 994,865.01

$1,704,498.34

$7,004,498.34

Stock held by Long Beach in San Francisco Bank.......... 608,400.00

Total security of San Francisco Bank.................... 7,613,898.34
Face value of Conservator's notes....................... 6,300,000.00

Excess of security over face of notes.................... 1,312,898.34
 less accrued interest to Aug. 3, 1953................... 704,498.34

Excess of security over principal and interest to Aug. 3, 1953 608,400.00

That interest has accrued and will continue to accrue upon said promissory notes of $6,300,000 from and after August 3, 1953 at the rate of $345.205 per day.

That interest has accrued and will continue to accrue upon said Government Bonds of $5,300,000 from and after August 3, 1953 at the rate of $345.068 per day;

That the excess of interest upon said promissory notes over interest upon said Government Bonds is the sum of $0.14 per day.

The court further finds that the excess of security thus held by the San Francisco Bank over and above the principal and accrued interest of said notes in the principal face of $6,300,000 is more than sufficient to secure the additional accruing interest of 14 cents per day, as well as costs and attorneys' fees, if any, and other charges which may arise in connection with the suit on the conservator's notes of $6,300,000 which is case No. 13979 of this court.

The court further finds that it is in the interest of orderly procedure that a day and hour certain shall be fixed for the execution of this order by the Clerk, in order to verify from his records the within calculations and in order that a definite sum shall be ascertainable as interest which is constantly accruing. Accordingly, the order hereinafter made will fix that date and hour and provide for delivery of the bonds and cash to a representative of the San Francisco Bank who shall be designated and authorized by the San Francisco Bank or by its counsel, to receive the same and execute a receipt therefor to the Clerk, in form to be approved by the court, by written designation and authorization filed with the Clerk. That 10 days from date hereof is a reasonable time to make such calculations by the Clerk and to make and file such designation by counsel, and prepare the form of receipt.

Whereas, on November 30, 1953 the Federal Home Loan Bank of San Francisco filed a Disclaimer of any and all present right, title, lien, interest or estate in, to or upon any and all of the real property more particularly described in any and every deed of trust, of record, wherein Long Beach Federal Savings and Loan Association of Long Beach, California, is the named beneficiary and which were assigned to Federal Home Loan Bank of San Francisco by A. V. Ammann as conservator of said Long Beach Federal Savings and Loan Association, or which were deposited in court in consolidated actions Nos. 5421–5678 in the above entitled District Court, which disclaimer is in compliance with the terms of said mandate and with said Memorandum of Opinion.

Now, Therefore, in compliance with the terms of said mandate, It Is Hereby Ordered that the order of court entered the 13th day of March, 1948 be, and it is hereby dissolved, set aside and vacated, insofar as said order required the Federal Home Loan Bank of San Francisco to deposit in the registry of this court promissory notes in the aggregate principal amount of $6,300,000 collateral securing the same, any other documents or property deposited by San Francisco Bank pursuant to said order and in further compliance with the terms of said mandate.

It Is Further Hereby Ordered that the Clerk of this Court shall on December 22nd, 1953, at 12 o'clock noon, deliver to the Federal Home Loan Bank of San Francisco, as collateral security only and not otherwise, on notes in the aggregate principal face of $6,300,000 hereinafter described in sub-paragraphs 5, 6, 7 and 8 of this paragraph, bonds, cash and documents as follows:

1. United States Government Bonds in the amount of $5,300,000 together with all interest coupons attached there-

to at the time of delivery of said bonds to said Clerk pursuant to Order dated March 13, 1948, said Bonds being described as follows:

| Description | Denominations | Maturity | The following and Subsequent Coupons Attached | Par Value |
|---|---|---|---|---|
| 2¼% Treasury Bonds 1959–62 (Dtd 11–15–45 | 26 at 100,000 Nos. 1912–35 2077/8 2 at 10,000 Nos. 84345; Star 380 | 12–15–62 | 6–15–48 | $2,620,000 |
| 2½% Treasury Bonds of 1967–72 (Dtd 11–15–45) | 13 at 100,000 Nos. 50757; 52982/8; 53218/22 13 at 10,000 60859/60; 62487; 208876/80; 88404; 177089/90. | 12–15–72 | 6–15–48 | $1,430,000 |
| 2½% Treasury Bonds of 1967–72 (Dtd 6–1–45) | 12 at 100,000 Nos. 7564; 10391; 27972/3; 30175/6; 26634; 22235; 7559; 8462; 16015/6 5 at 10,000 Nos. 74797; 20476/9 | 6–15–72 | 6–15–48 | $2,250,000 |
| | Total Par Value | | | $5,300,000 |

2. Cash, as of August 3, 1953, represented by and in the form of, interest coupons attached to said bonds in the sum of .................$709,633.33.

3. The coupons for interest on said bonds from and after August 3, 1953.

4. Cash out of funds now in the Registry of the Court in the sum of $994,865.01 together with an additional sum of fourteen cents ($0.14) per day from and after August 3, 1953 until the date said sum is delivered to said Bank pursuant to this order;

5. Original Straight Note dated June 28, 1947, for $2,300,000 in favor of Federal Home Loan Bank of San Francisco as payee, signed by A. V. Ammann, Conservator.

6. Original Straight Note dated November 20, 1947, for $500,000 in favor of Federal Home Loan Bank of San Francisco, as payee, signed by A. V. Ammann, Conservator.

7. Original Straight Note dated November 22, 1947 for $2,000,000 in favor of Federal Home Loan Bank of San Francisco as payee, signed by A. V. Ammann, Conservator.

8. Original Straight Note dated November 24, 1947, for $1,500,000 in favor of Federal Home Loan Bank of San Francisco as payee, signed by A. V. Ammann, Conservator.

9. Collection Agreement dated October 23, 1934 executed by Long Beach Federal Savings and Loan Association

and Federal Home Loan Bank of Los Angeles.

10. Subordination Agreement dated October 23, 1934, executed by Long Beach Federal Savings and Loan Association.

11. Pledge Agreement dated July 10, 1934 executed by Long Beach Federal Savings and Loan Association.

12. Application for Advances and Signature Card dated November 8, 1944, executed by Long Beach Federal Savings and Loan Association.

13. Application for Advances and Signature Card dated May 20, 1946 executed by Long Beach Federal Savings and Loan Association by A. V. Ammann, Conservator.

14. Pledge Agreement dated May 20, 1946, executed by Long Beach Federal Savings and Loan Association by A. V. Ammann, Conservator.

15. Collection Agreement dated May 28, 1946, executed by Long Beach Federal Savings and Loan Association by A. V. Ammann, Conservator, and Federal Home Loan Bank of San Francisco by A. C. Newell, Vice President and E. E. Pearson, Assistant Secretary.

16. Subordination Agreement dated May 28, 1946, executed by Long Beach Federal Savings and Loan Association by A. V. Ammann, Conservator.

17. Subordination Agreement dated January 6, 1948 executed by Long Beach Federal Savings and Loan Association by A. V. Ammann, Conservator.

by delivering the same to a person authorized in writing by the Federal Home Loan Bank of San Francisco, or by one of its counsel, to receive the same and execute a receipt therefor on behalf of the Federal Home Loan Bank of San Francisco which receipt shall be in a form approved by this court.

Counsel for the San Francisco Bank will make service of the within Order upon all counsel and file proof of service.

Dated at Los Angeles, California, this 11th day of December, 1953.

Pierson M. Hall
Judge

No. 12511
No. 12591

United States Court of Appeals
For the Ninth Circuit

Home Loan Bank Board, et al.,
　　　　　Appellants,
　　vs.
Mallonee, Bucklin and Fergus, etc., et al.
　　　　　Appellees,
and consolidated case
Federal Home Loan Bank of San Francisco, et al.,
　　　　　Appellants,
　　vs.
Federal Home Loan Bank of Los Angeles, et al.,
　　　　　Appellees.

No. 12511

John H. Fahey, et al.,
　　　　　Appellants,
　　vs.
O'Melveny & Myers, et al.,
　　　　　Appellees,
and
Federal Home Loan Bank of San Francisco,
　　　　　Appellant,
　　vs.
O'Melveny & Myers, et al.,
　　　　　Appellees.

No. 12591

Mandate

United States of America, SS:

The President of the United States of America

To the Honorable, the Judges of the United States District Court for the Southern District of California, Central Division, Greeting:

Whereas, lately in the United States District Court for the Southern District of California, Central Division, before you or some of you, in consolidated causes between Mallonee, Bucklin and Fergus, et al., plaintiffs, third party plaintiffs and cross-claimants, and John H. Fahey, et al., defendants, Civil No. 5421–

P.H.; and between Federal Home Loan Bank of Los Angeles, et al., plaintiffs, and Federal Home Loan Bank of San Francisco, et al., defendants, Civil No. 5678–P.H.; wherein an Order of Preliminary Injunction was duly filed, and entered on the 2nd day of December, 1949, and wherein an Order re allowance of attorneys' fees on account was duly filed and entered on the 19th day of June, 1950; which said orders are of record and fully set out in said causes in the office of the Clerk of the said District Court, to which record reference is hereby made and the same is hereby expressly made a part hereof.

And Whereas, the said John H. Fahey, et al., and said Federal Home Loan Bank of San Francisco have appealed to this Court as by the inspection of the transcript of the record of the said District Court, which was brought into the United States Court of Appeals for the Ninth Circuit by virtue of an appeal agreeably to the Act of Congress, in such cases made and provided, fully and at large appears.

And Whereas, on the 1st day of May, in the year of our Lord, one thousand nine hundred and fifty one, the said consolidated causes came on to be heard before the said United States Court of Appeals for the Ninth Circuit, on the said transcript of record, and was duly submitted.

And Whereas, on the 6th day of May, in the year of our Lord, one thousand nine hundred and fifty-two, the said consolidated causes came on to be heard before the said United States Court of Appeals for the Ninth Circuit, on the said transcript of record, and was duly submitted.

And Whereas, said actions were consolidated in the District Court for all purposes, and a review of decisions in both said appeals was sought by appellees upon consolidated petitions for writs of certiorari to the United States Supreme Court, which said petitions were denied on the 4th day of May, 1953:

On Consideration Whereof, It is now here ordered and adjudged by this Court that the said orders of the said District Court in these consolidated causes be and hereby are reversed and that said consolidated causes be and hereby are remanded to the said District Court with directions to:

1. Dismiss Civil Action No. 5678–P.H. at the cost of plaintiffs.

2. Dismiss the following pleadings in Civil Action 5421–P.H.:

(a) The complaint of Mallonee, Bucklin and Fergus, and all amendments and supplements thereto, at the cost of said complainants;

(b) The cross-claim and third party complaint of Long Beach Federal Savings and Loan Association, and all amendments and supplements thereto, at the cost of third party complainant and cross-claimant;

(c) The cross-claim of Federal Home Loan Bank of Los Angeles, and all amendments and supplements thereto at the cost of said cross-claimant;

(d) The cross-claim in interpleader of Title Service Company, and all amendments and Supplements thereto, at the cost of said cross-claimant;

(e) The cross-claim in interpleader, and all amendments and supplements thereto, of Robert H. Wallis, at the cost of said cross-claimant;

3. Dissolve, set aside and vacate the order of said District Court entered the 13th day of March, 1948, insofar as the same requires Federal Home Loan Bank of San Francisco to deposit in the Registry of said District Court promissory notes in the aggregate principal amount of $6,300,000, collateral securing the same and any other documents or property deposited by San Francisco Bank pursuant to said order; and return to Federal Home Loan Bank of San Francisco without charge or impairment said promissory notes, together with Government bonds in the face amount of $5,-300,000 with all interest coupons attached thereto at the time of deposit and together with cash from the sum in the Registry of said Court sufficient to make the combined total sum of $6,324,098.35,.

with interest on $6,300,000 at 2% per annum from the 10th day of March, 1948 until the date of such release.

4. Set aside and vacate said order of preliminary injunction entered the 2nd day of December, 1949.

You, Therefore, Are Hereby Commanded that such proceedings be had in said consolidated causes, in conformity with the opinions and judgments of this Court, as according to right and justice, and the laws of the United States, ought to be had, the said appeals notwithstanding.

Witness, the Honorable Fred H. Vinson, Chief Justice of the United States, the 21st day of May in the year of our Lord one thousand nine hundred and fifty three.

Paul P. O'Brien
Clerk, United States Court of Appeals for the Ninth Circuit.

Appendix F
Filed
Dec. 21, 1953
Edmund L. Smith, Clerk
By Edw. F. Drew
Deputy Clerk

United States District Court
Southern District of California
Central Division

Malonee, et al.,
Plaintiffs,
v.
Fahey, et al.,
Defendants.
No. 5421–PH

Federal Home Loan Bank of Los Angeles, et al.,
Plaintiffs,
v.
Federal Home Loan Bank of Portland, sometimes known and referred to as Federal Home Loan Bank of San Francisco, et al.,
Defendants.
No. 5678–PH

Order Staying Enforcement of Order Directing Return of Collateral etc., Pending Hearing of Motion to Retain Assets in court

Upon reading the verified "Motion for Stay of Order Directing the Return of Collateral in Accordance With Mandate," filed herein, it appears to the Court:

1. That this court made and filed its Memorandum of Opinion in the above entitled matter on November 30, 1953, concerning various and sundry motions and orders, and, among other things, thereafter made an order on December 11, 1953, ordering and directing the delivery of certain property on deposit in the registry of the court in the above entitled matter to the Federal Home Loan Bank of San Francisco at twelve o'clock noon on December 22, 1953;

2. That subsequent thereto and, to-wit: on December 21, 1953 a motion by the Long Beach Federal Savings and Loan Association, cross-claimant in action No. 13979 of the above entitled court, was filed for retention of the property above mentioned, now on deposit in the registry of this court in the above numbered actions to be retained on deposit in the registry of this court in action No. 13979 and simultaneously filed in connection therewith a document entitled "Tender in Connection with Motion for Stay" and produced in court a cashier's check dated December 17, 1953 in the amount of $7,004,498.34, which counsel indicated would be tendered in action No. 13979 on certain conditions; and, upon motion of Long Beach Federal Savings and Loan Association, cross-claimant in action No. 13979, issued an Order to Show Cause returnable before this court on January 11, 1954 at ten o'clock a. m. of said day in connection with the motion and proposed tender in said action No. 13979.

3. That without any decision or indication of opinion or decision as to the merits or contentions of the said Long Beach Federal Savings and Loan Association, this court must, in the interest

of justice, give consideration to those contentions and hence has made the Order to Show Cause, above referred to and does now

Hereby Order that said Order directing the return of collateral in accordance with mandate, made by this court December 11, 1953 in action 5421, is hereby stayed pending hearing and ruling by this court on said motion for retention of assets in the registry of this court in action No. 13979, and until further order of this court, and that a copy of this order, of the motion and its attached papers and memorandum of points and authorities be served upon Federal Home Loan Bank of San Francisco by service of a true and correct copy thereof upon its attorney, Sylvester Hoffman, 810 Chester Williams Building, 215 West Fifth St., Los Angeles, California, on or before twelve o'clock noon December 22, 1953.

Dated at Los Angeles, California, this 21st day of December, 1953.

Peirson M. Hall
Judge

For findings of facts, conclusions of law, orders and judgment, see 122 F. Supp. 960.